### Kathleen M. Tower v. Arthur F. Tower

[138 A2d 602]

November Term, 1957.

Opinion Filed January 7, 1958.

214

*Black, Plante & Ellison* for the libelant.

*Wilson & Keyser* for the libelee.

**Adams, J.**   This is a libel for divorce with a prayer for alimony and suit money.   It was amended into a divorce from bed and board.   Both parties appeared with their respective attorneys and testified.   The court made and filed findings of fact.   The libelee then filed a motion to dismiss for want of jurisdiction on the ground that the libelant on the findings of fact had not established her residence in Vermont and did not reside therein for a period of six months or more next preceding the date of bringing the libel and did not reside in this state one year next preceding the date of final hearing as required by V. S. 47, §3214.

The court made and entered a decretal order granting the motion and dismissed the libel for want of jurisdiction because

the residence of the libelant within the state had not been proved as required by statute. The case is here on exceptions of the libelant to the decretal order, to certain findings of fact and to the failure of the court to make certain requested findings.

The findings to which no exceptions were taken show the following material facts: The libelee and libelant were married in Paris, France on October 14, 1930 and two children were born of the marriage, both of whom are over 21 years of age. The libelee was employed by the State Department of the United States for many years and was so employed in 1949. The parties lived together as husband and wife until January, 1949, at which time they were living in Washington, D. C. Differences arose between them then and previously over financial matters. They have not lived together as husband and wife since that date and have lived separate and apart from each other since then. In June, 1950, the libelee left the U. S. on an assignment by the State Department to Vienna, Austria and this assignment was conditioned upon the libelant not being with the libelee at that post. The libelee was in Vienna one year and then returned to the United States, retired upon an annual pension of $4,580.00 and lived in New Rochelle, N. Y. for several months.

The libelee bought a place in Thetford, Vermont in 1951 and after September 25, 1952 began to "winterize" the dwelling for year round use and by November 11, 1952 he was living in Thetford, more or less continuously, except for an absence of from five to six weeks commencing in December 1952, when he was traveling in Canada. He acknowledged by his own testimony that Thetford was his residence early in 1953. When the parties separated in 1950, they owned three houses in Washington, D. C., and the libelee released any interest that he had therein to the libelant and she has worked and supported herself since the parties separated. The libelant, since July, 1952, has been engaged as a licensed real estate salesman in Maryland and the District of Columbia. She owns a three apartment house in Washington and a single residence in Maryland.

The libelee herein instituted divorce proceedings against

the libelant herein in the First Civil Court of Bravos District in the State of Chihauhau, Republic of Mexico, on October 20, 1952. Previous to filing the petition he signed the official register of residents of the City of Chihauhau. He was issued a decree of divorce effective December 5, 1952 by the court in Mexico in which he instituted the divorce proceedings. He attempted to have the libelant herein sign a power of attorney to show consent to the divorce proceedings in Mexico. She never consented to the jurisdiction of the Mexican Court or the employment of any attorney to act for her in those proceedings and there was no evidence of any valid service of the process on her, but she had actual notice of the pendency of the proceedings. The libelee herein went to Mexico for one day only in 1952 with the sole purpose of initiating the proceedings for the Mexican divorce and returning immediately to the U. S. He has spent only one day in Mexico since 1934. There has been no divorce granted or issued to either of the parties other than the one issued in Mexico effective December 5, 1952.

After going to Vienna in June, 1950, the libelee became acquainted with Irmgard M. Tower. She came to Montreal, Canada, in August, 1951 and to the United States on March 4, 1953.

The libelant excepted to finding 51 which reads as follows: "That on March 14, 1953, the libelee went through a ceremony of marriage with said Irmgard M. Tower at Union Village, Vermont before Rev. Bigelow and that there have been two children born to them, on January 6, 1954, and on April 18, 1955, respectively." The ground of the exception is that the ceremony of marriage referred to therein was illegal and took place at a time when the libelee was still legally married to the libelant and that the two children referred to in the finding are illegitimate children of the libelee and Irmgard M. Tower. The finding is factually correct and in accordance with the evidence. The libelant claims in her brief that the finding was incomplete and therefore not in accordance with the evidence as the purported Mexican divorce was no divorce at all and the finding should have stated that the attempted marriage referred to was void, the children illegitimate, the parties guilty of adultery and

the libelee also guilty of bigamy. Whether or not the Mexican divorce was void was a question of law as were all the conclusions that the libelee claims were lacking in the finding. The court stated the facts. The conclusions of law to be derived therefrom were not necessary as an addition to the finding. The exception is not sustained.

The libelee excepted to finding 12. This finding states in part: "That on August 27, 1952, after several months' negotiations, a separation agreement, in writing, was voluntarily entered into by the parties. Libelee's Exhibit B. which is set forth in words and figures as follows:" Then the agreement is set forth in its entirety in the finding. The agreement sets forth that the parties are living apart and divers disputes and unhappy differences have arisen between them as a result of which it is impossible for them to live happily together and the parties desire to enter into articles of separation for the purpose of confirming their separation and making certain arrangements in connection therewith. Then follows their mutual agreements contained in eight paragraphs, so numbered. We quote No. 1: "That it shall be lawful for each of the said parties at all times to live and continue to live separate and apart from the other and to reside from time to time at such place or places and with such person or persons as either such party may see fit, free from any control, restraint or interference, directly or indirectly, by the other and in all respects as if such party were sole and unmarried."

The following paragraphs pertain to the contracting of debts by the wife; division of household furniture, effects and silver; the wife assuming the care, support, maintenance and education of the two children to continue through the remaining two years of their college; the husband turning over to the wife the proceeds and full cash value of two United States Government endowment policies, the payment to be used for the support and education of the children and the keeping in force by the husband of two life insurance policies of $5,000.00 each with the wife as single and sole beneficiary.

The agreement was acknowledged by the husband to be his free act and deed before a notary public in the state of Vermont on August 27, 1952 and acknowledged by the wife to be her

free act and deed before a notary public in the District of Columbia on September 3, 1952.

Finding 13, to which no exception was taken, states: "That at the time the separation agreement was signed by the wife, she owned a place at 2328 Ashland Place, N. W., Washington, D. C., and had her home at that address."

Referring to the exception to finding 12, it is to that part of the finding that we quoted, "after several months' negotiations, a separation agreement, in writing, was voluntarily entered into by the parties." The ground of the exception is that there is no evidence to support such a finding and on the further ground that the court in finding 36 found that the libelant was told at the time she signed the agreement that the only way she would get the money set aside for the education of the children was to sign the agreement.

The libelant in her brief urges that when she signed the agreement her act was not voluntary. To sustain that claim, she quotes testimony of the libelant, the substance of which is that she signed it because the libelee's lawyer told her that was the only way she would get the money that the parties had set aside for their sons' education. That testimony is apparently the basis for finding 36 referred to in the libelant's exception to finding 12. The libelee in his brief quotes his testimony where he denied using any influence or pressure upon the libelant in regard to signing the agreement and that she never found any fault with it but has exacted every provision of it. It also appears by the agreement itself that when the libelant signed it in Washington, D. C., that she acknowledged it to be her free act and deed. It also appears from other findings that the parties in January, 1949, and previously, had differences over financial matters and that they had lived separate and apart from each other since that date and had not lived together as husband and wife since then. In addition to finding 13 that we have quoted it appears from other findings that in 1950 the parties owned three houses in Washington, D. C. and that the libelee at that time released any interest he had therein to the libelant and she owned and had the benefit of the properties since then.

██ A finding, like all other findings, to which exceptions

are taken, must stand if it can be supported upon any rational view of the evidence. *Colby's Executor* v. *Poor*, 115 Vt 147, 152, 55 A2d 605, and cases cited. A finding must stand if there is legitimate evidence fairly and reasonably tending to sustain it; if this is so, the fact that the evidence is conflicting cannot avail the excepting party, for all conflicts must be resolved against him on review. The weight of the evidence and the credibility of the witnesses are for the trier of the facts to determine. *Sparrow* v. *Cimonetti*, 115 Vt 292, 297-298, 58 A2d 875, and cases cited.

That part of finding 12 challenged by the exception is supported by the evidence. It qualifies as a proper and legitimate finding when tested by the foregoing rules. The exception is not sustained.

The libelant excepted to findings 9, 10, 14 and 15 which are as follows: No. 9, "That the libelant has never physically lived in Vermont." No. 10, "That the libelant has never lived in Vermont with the libelee as husband and wife." No. 14, "That the legal domicile of the parties when they separated in June, 1950, was in Washington, D. C., and the libelant has continued to make that city her home with the intention that it should remain such." No. 15, "That the libelant has never had any intention to live anywhere else than in Washington, D. C. and still intends to live in Washington, D. C."

The libelant challenges these findings in her brief upon the following grounds: (a) "That the libelee refused to allow the libelant to live with him in Vermont or elsewhere." (b) "The libelee refused to provide any support for the libelant." (c) "The libelee was living in adultery in Vermont with a woman other than the libelant." She does not seem to challenge the findings on the ground that they are not supported by the evidence, but rather upon the ground that they are not justified by the evidence because of the conduct of the libelee. In fact, the grounds of the exceptions to findings 9 and 10 do not mention that they are not supported by the evidence. She could not challenge them on that ground for the evidence is undisputed in regard to the facts set forth therein.

The libelant's brief is apparently based upon the claim that the libelee's conduct was such that she could not live

with him in Vermont or elsewhere. She quotes testimony in her brief to the effect that the libelee told the libelant in 1949 and 1951 that he did not wish to live with her as his wife and that when they separated in 1949, it was at his request. She mentions the Mexican divorce proceedings and the purported marriage of the libelee in Vermont in 1953. It is apparent that when the libelee was in Vienna in 1950 he became infatuated with another woman and the findings show that she came to Canada in 1951 and to the United States in 1953.

The libelant ignores the evidence and finding that in January, 1949, while the parties were living together as husband and wife and previously to that time differences arose between them over financial matters. We apprehend that such differences do not always arise because of the fault of one party only. The libelant ignores the fact found that the parties have not lived together since January, 1949, as husband and wife and have lived separate and apart since then, and that they entered into the separation agreement in August, 1952, wherein it was mutually agreed that they continue to live separate and apart from each other as fully set forth in paragraph 1 thereof that we quoted in full. It is set forth therein that the libelant is a resident of the District of Columbia and that the "parties desire to enter into the articles of separation for the purpose of confirming their separation." She also ignores finding 13 that we have heretofore quoted that her home was in Washington, D. C. at the time she signed the agreement. There was testimony coming from the libelant herself that she always and still intended to live in Washington and never intended to live anywhere else.

Tested by the rules set forth in the cases that we cited, *supra*, in discussing the exception to finding 12 and which we need not repeat, findings 9, 10, 14 and 15 are supported by the evidence. They are fully justified and were properly made by the court. The exceptions thereto are not sustained.

■ We now take up the libelant's exception to the decretal order dismissing the libel on the ground that she had not proved that her residence was within the state of Vermont as required by the statute. This general exception raises the question whether the decretal order is supported by the facts

found. *Turner* v. *Bragg*, 118 Vt 43, 45, 100 A2d 431; *Andrews* v. *Newton*, 118 Vt 290, 291, 108 A2d 517.

■ The weight of authority is that a bona fide residence under statutes in order to confer jurisdiction in divorce proceedings is within the legal meaning of domicile, that is, an abode *animo manendi*, a place where a person lives or has his home, to which, when absent, he intends to return and from which he has no present purpose to depart. Annotations, 159 ALR 499, 106 ALR 9. That is the rule in this jurisdiction. *Blondin* v. *Brooks*, 83 Vt 472, 483, 76 A 184; *Taylor* v. *Taylor*, 95 Vt 94, 95, 112 A 355.

The libelant seeks to invoke the common law theory that the identity of the persons—the husband and wife being considered as one—fixes the domicile of the wife as that of her husband and denies to her the power of acquiring a domicile of her own separate and apart from him. 28 CJS, Domicile, §12, p. 24.

■ The identity of the wife's domicile and that of her husband, arising out of the common law rule as to the unity of the spouses, is subject to an exception where the unity is no longer a fact because of separate residences of the spouses under hostile circumstances and there is no fault on the part of the wife. 17A Am Jur, Domicile, §59, p. 240.

Since desertion separates the spouses, not only in law, but in fact, the courts are practically unanimous in agreeing, in dicta and decision, that where the husband has deserted the wife or where there has been a mutual abandonment of the marriage relation, so that every purpose of the marriage is destroyed, the reason for the rule that the husband fixes the family domicile ceases, and with it the rule itself ceases, and the wife is then at liberty to establish a separate domicile for all purposes. 17A Am Jur, Domicile, §63, p. 243; Annotations, 90 ALR 358; 128 ALR 1422; 175 ALR 1254.

This Court in *Patch* v. *Patch*, 86 Vt 225, 227, 84 A 815, and *Wilder* v. *Wilder*, 93 Vt 105, 107-108, 106 A 562, recognized the fact that the wife may have for divorce purposes a separate residence and domicile from that of her husband.

We are here presented with a question never passed upon

so far as we know in this jurisdiction. Can the wife who does not have a residence or domicile in this state in her own right maintain an action for divorce here when the parties have never had a matrimonial domicile in the state but her husband has established a residence and domicile here in his own right?

According to the weight of authority, where the husband abandons or deserts the wife, leaves the matrimonial domicile and establishes a domicile in another state or country, the wife's domicile does not follow the husband's so as to entitle her to bring an action for divorce in the state or country in which he has taken up his new domicile, where she remains at the matrimonial domicile or establishes a new domicile in a state or country other than that in which the husband has established his domicile and she does not attempt to comply with the statutory requirements of his domicile. In other words, she must sue at the place where she has retained her domicile or established a new one. There is, however, some support for the view that the wife may, by virtue of the rule that her domicile follows the husband, claim a domicile or residence which will sustain the jurisdiction of the court in a suit for divorce in the state or country to which the husband has removed and in which he has established his domicile. 17 Am Jur, Divorce and Separation, §296, p. 470.

The libelant urges us to adopt the minority view mentioned above as having some support. The cases are listed in an annotation in 39 ALR 717. The annotation lists cases from ten jurisdictions that sustain the majority rule and deny the wife the right to maintain the action where it is based on the technical legal fiction that her domicile is that of her husband where he has left the matrimonial domicile and established his own elsewhere.

In *Phelps* v. *Phelps*, 241 Mo App 1202, 246 SW2d 838, 845 the court said, omitting citations: "Hence the requirement of residence within the state cannot be satisfied, in case of a suit by a wife for a divorce, by invoking the rule that the domicile of the wife follows that of the husband when it appears that she is not an actual resident of the state for the time required, although the husband's domicile was in the state during that time. Some courts have taken a contrary view, but

most of those cases can be explained on the ground that the wife was compelled to leave the matrimonial domicile and live in another state because of the wrongful conduct of her husband."

Some of the cases that take a contrary view can be explained because of the statutes pertaining to bringing and maintaining divorce actions. In some instances they provide for an exception in regard to the period of residence when the cause accrues in the state. This applies particularly in actions based upon desertion. Thus *Ashburgh* v. *Ashburgh*, 17 Ill 476, can be explained because the desertion of the husband became complete after he became a resident of Illinois. The case of *Thoms* v. *Thoms*, 222 Ill App 618, relied upon by the libelant, cited the Ashburgh case and seemed to rely upon it for the holding in the latter case. However, Illinois seems to be one of the few states that is committed to the minority rule. It seems to be based upon protecting the marital rights of the wife where she is deserted and abandoned by the husband in another jurisdiction and who then takes up his residence in Illinois. *Kensley* v. *Hudelson*, 99 Ill 493. That reasoning cannot apply where the parties mutually separate and agree to live separate and apart from each other as in the instant case.

The libelant relies upon *Brewer* v. *Brewer*, 268 Ky 625, 105 SW2d 582. That case is distinguishable from the instant case and is not in point. It had to do with a homestead right after the death of the husband and where the wife had temporarily left it because of lack of repairs. *Brown* v. *Brown*, 112 NJ Eq 600, 165 A 643, also relied upon by the libelant is not in point. There the wife deserted the husband without just cause in New Jersey and went to Pennsylvania taking two children with her. The suit was by the husband in regard to custody and control of the children and personal service was had upon the wife in New Jersey.

The libelant also relies upon *Boreing* v. *Boreing*, 114 Ky 522, 71 SW 431, and *Peterson* v. *Peterson*, 156 Ky 202, 160 SW 952. They are both distinguishable. In both of those cases the matrimonial domicile of the parties was in Kentucky when the wife in each case left the state. In each case the

husband continued to live in Kentucky. The wife in each case brought suit for divorce in Kentucky. The court held that on the facts in each case the action was maintainable and properly brought in Kentucky as neither libelant had lost her residence there. These cases are comparable to *Miller* v. *Miller*, 88 Vt 134, 135, 92 A 9, LRA 1915D, 852. There the wife left her husband and the matrimonial domicile and went to Chicago. She later returned to Vermont and instituted divorce proceedings. This Court held and was careful to point out, as there was no finding that she intended to make Chicago her home, that her residence and domicile was still in Vermont where it was when she left as she had not acquired a new one. It was expressly stated that the Court was not required to go as far as holding that she could sustain her action on her husband's domicile as the findings did not show that she had acquired a domicile in Chicago. Her right to maintain her action on constructive residence and domicile was expressly eliminated. That case is not applicable here. There the libelant had previously resided in Vermont and had not acquired a residence elsewhere. The libelant in the instant case had not previously or at any time lived in Vermont.

Referring again to the cases in Kentucky upon which the libellant relies. In *George* v. *George*, 190 Ky 706, 228 SW 408, 39 ALR 700, the matrimonial domicile was in Michigan and the husband, as alleged in the petition, abandoned his wife and came to Kentucky and thereafter resided there. The wife continued to reside at the matrimonial domicile in Michigan. Later she filed a suit in Kentucky for divorce and alimony. She relied upon her constructive residence in Kentucky because of the general principle of law making the domicile of the wife follow that of her husband. The court in a well reasoned opinion held that the trial court was without error in dismissing the petition for lack of jurisdiction. The Boreing and Peterson cases, *supra,* were cited in the opinion and the court distinguished them from the case under consideration.

The libelant also relies upon the case of *Sewall* v. *Sewall* 122 Mass 156. There the suit was brought by the wife in Massachusetts, the state of the matrimonial domicile and where

the husband was then living. The case is distinguishable and is comparable to *Miller v. Miller, supra,* 88 Vt 134, 92 A 9.

The libelant claims that the Miller case, coupled with our statute, V. S. 47, §3214, makes it unnecessary for her to reside in the state for any statutory period prior to bringing her libel. In other words, she claims that the statute is such, she being the wife of the libelee, that its provisions are met because her husband has a residence and domicile in this state. In our discussion of the question, we take that as an established fact as the libelee does not claim his residence to be elsewhere.

■■ In the interpretation of statutes the fundamental rule is to ascertain and give effect to the intention of the legislature. The whole and every part of the enactment must be given attention as well as other statutes *in pari materia.* The true meaning of the legislature is to be ascertained, not from a literal sense of the words used but from a consideration of the whole and every part of the statute, the subject matter, the effect and consequences and the reason and spirit of the law. Among other aids that may be employed in determining the intention of the legislature are consideration of the history of the statute's enactment and the trend of previous legislation. *In re Estate of Cooke,* 117 Vt 336, 338, 91 A2d 683. The intention of the legislature constitutes the law. *State Highway Board* v. *Gates,* 110 Vt 67, 73, 1 A2d 825, and cases cited.

■ V. S. 47, §3213, provides in part,—"Libels for divorce for any cause and for affirming or annulling the marriage contract shall be brought in the county in which the parties or one of them resides." That recognizes and indicates that the libelant and libelee may reside in different counties and that the libelant, if the wife, need not rely upon a constructive residence with her husband in the county where he resides, if both are residents of the state.

In 1933, the provisions of what is now V. S. 47, §3214, were as follows,—P. L. 3126. "YEAR'S RESIDENCE REQUIRED. A divorce shall not be decreed for any cause, unless the libelant has resided in the state one year next preceding the filing of the libel in court." That was the law, P. S. 3071, when *Miller* v. *Miller, supra,* 88 Vt 134, 92 A 9, was decided.

By No. 55 of the Acts of 1939, P. L. 3126 was amended to read as follows: "PERIOD OF RESIDENCE. Except when a longer period of residence is required by law, a libel for divorce or annulment of marriage may be brought by a person who has actually resided within the state for a period of six months or more, but a divorce shall not be decreed for any cause, unless the libelant has resided in the state one year next preceding the date of final decree."

■ It seems plain from this amendment that some pressure was used to have the requirement of a residence for one year reduced. It is apparent that the legislature had no intention of making any substantial change. It shortened the period to a six months' residence within the state before the libel could be brought. It was not ready to go the full distance, however, so it provided for a residence in the state of one year before final hearing. Then to make sure, perhaps doubly so, that it was not opening the door too much and that it was not inclined toward the idea of easing the way for people to come into the state for divorce purposes without establishing a bona fide residence it added the word "actual" before the six months' period. We also call attention to another noticeable difference contained in two parts of the amendment, making a change in the wording as it was before the amendment. Residing for the first six months shall be *within the state*, while for the full one year period before hearing it must be *in the* state (emphasis supplied in both instances). We must assume that the legislature had some reason for using different terms to modify the word "resided" when it is used twice in the same sentence. Manifestly "within" was used in order to convey a more restricted meaning than "in", or the same word would have been used in each place. We must assume that the legislature used the words advisedly and give effect to each and every part of the act.

By No. 32 of the Acts of 1943, the Act of 1939 was amended to read as follows: "RESIDENCE, PERIOD. Except when a longer period of residence is otherwise required by law, a libel for divorce or annulment of marriage may be brought by a person who has resided within the state for a period of six months or more, but a divorce shall not be decreed

for any cause, unless the libelant has resided in the state for one year next preceding the date of final hearing. Temporary absence from the state because of illness, employment without the state, service as a member of the armed forces of the United States, or other legitimate and bona fide cause, shall not affect the six months' period or the one year period specified in the preceding sentence, provided the person has otherwise retained his residence in this state."

This Act, No. 32, has now become V. S. 47, §3214, as it was enacted except that in the 1947 revision the following words as its beginning were omitted, "Except when a longer period of residence is otherwise required by law." Such omission is immaterial here. It should be observed that the words "resided within the state" as applied to the six months' period and "resided in the state" as applied to the one years' period have been retained and modify "resided" in each instance.

The libelant urges that when the word "actually" was taken out of the statute by the amendment in 1943 it is plain that the legislature had the intention to change the law so that a wife can, as in the instant case, use a constructive residence, i.e., the residence of her husband in the state, as the basis for her compliance with the statutory period. There would be more merit in her claim if that had been the only change in the law by the amendment. However, the last full sentence about temporary absences was added, including absence because of service in the armed forces as well as for other purposes. World War II was in existence at that time. But, and this is significant, there was included in the sentence, "provided the person has otherwise retained his residence in the state." Manifestly, there must be a residence established before there can be a temporary absence from it and to free the matter of temporary absence from doubt the word "actually" was eliminated. Its elimination was in connection with the added sentence and not for any separate purpose.

If it had been the intention of the legislature to allow a wife to maintain her libel without even being physically present in the state and ride into the jurisdiction on the legal fiction of the unity of her residence and domicile being that of her husband and she has no intention of making her residence

here and they have separated and are living apart and she is still living at the matrimonial domicile. the language should have been so plain that it would not have been open to question and construction or inference. If we should hold, as the libelant urges, the statute would be broad enough so that a husband could establish a residence and domicile in this jurisdiction, which could be done in almost a matter of hours, and the wife could then immediately bring a libel for divorce and for jurisdiction rely upon the fiction that her residence and domicile was the same as his. She could thus obtain a divorce without any regard to the statutory provision as to the residence of either. This statement of where the reasoning might lead shows its fallacy.

We do not construe the statute and law as claimed by the libelant. On the findings there was no error in dismissing the libel for non-compliance by the libelant with the statutory requirement in regard to residence.

Our holding makes it unnecessary to consider the claimed errors briefed by the libelant because the court failed to make some of her requested findings as those pertain to the merits of her cause for divorce.

*The decretal order dismissing the libel is affirmed.*