In re Douglas G. KNAPP and Gloria J. Knapp, Bankrupt.

**RED CARPET HOMES OF JOHNSTOWN, INC., Plaintiff-Appellee,**

v.

**Stephen GERLING, Trustee in Bankruptcy, Defendant-Appellant.**

**No. 869, Docket 78–5006.**

United States Court of Appeals, Second Circuit.

Argued April 20, 1978.

Decided from the bench April 20, 1978.

Opinion filed May 4, 1978.

Stephen D. Gerling, New Hartford, N.Y., for defendant-appellant.

William Pozefsky, Gloversville, N.Y. (Pozefsky, Tocci & Pozefsky, Gloversville, N.Y., of counsel), for plaintiff-appellee Red Carpet Homes of Johnstown, Inc.

Before KAUFMAN, Chief Judge, and LUMBARD and SMITH, Circuit Judges.

IRVING R. KAUFMAN, Chief Judge:

Article Nine of the Uniform Commercial Code (U.C.C.), responding to the myriad of existing security devices, established a comprehensive statutory scheme for the creation and regulation of security interests. Yet, despite this simplification and clarification of the law, the answers to relatively straightforward questions remain clouded by uncertainty. This case presents one such issue—the proper place to file a document perfecting a security interest in consumer goods, where the debtor changes his place of residence between the time of attachment and the time of filing. To place this question in proper perspective, the undisputed facts underlying this appeal will be reviewed briefly.[1]

## I

On July 23, 1973, Gloria and Douglas Knapp bought a 1973 Titan Mobile Home from LTS Homes, Inc., for $16,162.20, financing their purchase by conveying a security interest in their home to LTS Homes. The contract signed by the Knapps listed their address as Star Route, Stratford (in Herkimer County), although the Knapps were actually living in Fulton County and had resided there for approximately fourteen months. Indeed, the full Fulton County address, 50 Washington Avenue, Gloversville, had been listed by Douglas Knapp five days earlier, on July 18, as the Knapps' place of residence, when he executed a credit statement in connection with the purchase. The Knapps, despite their residence elsewhere, decided to refer to the Herkimer County address on the July 23 contract for two reasons. They were planning to move into the mobile home upon its delivery to the site in Herkimer County, and had so informed the secured seller. In addition, the tax rate in Herkimer County was substantially lower than that prevailing in Fulton County.

The mobile home was delivered as planned to its Herkimer County site sometime between July 27 and August 1. At a date prior to August 6, the Knapps moved from Gloversville to Star Route. On August 6, 1973, following this change in residence, the secured creditor's assignee, the Central Trust Co. of Rochester, filed a financing statement pursuant to U.C.C. § 9–401 in the office of the County Clerk of Fulton County.[2]

---

1. Although this case was decided from the bench, the importance of the question to the commercial community, and the absence of clear precedential authority in the area, prompted us to reduce our views to writing.

2. All references to the Uniform Commercial Code, of course, are to its provisions as adopted by the New York State legislature. N.Y.U.C.C. § 9–401 (McKinney, 1964).

Three years later, the Knapps filed voluntary petitions in bankruptcy listing, among other debts, the unpaid installment balance on the home. Shortly thereafter, Central Trust reassigned its interest in the security agreement to Red Carpet Homes of Johnstown and, pursuant to the terms of that agreement, Red Carpet repossessed the mobile home. The trustee in bankruptcy, acting on behalf of the Knapps' general creditors, thereupon opposed Red Carpet's claim to secured creditor status because of alleged improper filing of the security interest. In sum, he urged that the financing statement did not operate to perfect the security interest in the mobile home because it had been filed in Fulton County, from which the secured seller had known the Knapps were departing, and not in Herkimer County, where they had intended to reside. Although the bankruptcy judge accepted the trustee's position, Judge Munson reversed him, holding that the place of *actual* residence at the time the security interest attached was controlling. This appeal followed.

## II

In seeking to overturn Judge Munson's decision, the trustee makes two arguments. First, he urges that, if the debtor's residence at the time the security interest attaches is dispositive, then the intention of the debtors as manifested to the creditor is controlling. Alternatively, he argues that the place of filing should be determined with reference to the debtor's residence at the time of filing. While the trustee's position cannot be dismissed as totally lacking in policy justification, we believe Judge Munson's view is better supported by reason and precedent, and follows the wiser and more pragmatic course.

### a.

■ One of the primary purposes motivating the drafters of U.C.C. § 9–401 was to simplify the creditor's task in choosing the proper place to file. Accordingly, they denominated the place of filing for consumer goods as the county of the debtor's actual residence.[3] Since residence, under New York law, "means living in a particular locality and requires bodily presence as an inhabitant in a given place," *Marine Midland Trust Co. of Binghamton v. Dugan*, 202 Misc. 847, 119 N.Y.S.2d 714, 718 (1954), it is clear that the Knapps were residing in Fulton County at the time the security interest attached.

■ Significantly, the Code eschews any scheme that would require a secured party to maintain regular and continuing surveillance of the debtor. A security interest, once perfected by filing, remains effective regardless of the number of times or places the debtor or the collateral moves. U.C.C. § 9–401(3). To suggest that the express intention of the debtor respecting residence controls would needlessly complicate the Code's design. If, for example, the Knapps had moved their mobile home to a third county between the date of its delivery to Herkimer County and the filing date of August 6, filing in Herkimer County would have borne little relation to the incidents of the underlying transaction, and would leave creditors even more confused.

■ The sparse precedent we have found supports the secured creditor's position. *See In Re O'Donnell*, 7 UCC Rep.Serv. 888 (D.Me.1970). Indeed, the facts of *O'Donnell*, cited by both parties to buttress their contentions, are quite similar to those of the case before us. In *O'Donnell,* the debtor resided in East Millinocket, Maine, when she signed a security agreement to finance the purchase of a mobile home. She could not find an available lot for her trailer in that community and accordingly notified the seller to deliver the trailer to Medway. Subsequently, the debtor took up residence in Medway and, following that change, the secured party's assignee filed a financing

---

**3.** Both parties agree, and the New York cases quite clearly establish, that a mobile home, as a motor vehicle, is a "consumer good" for purposes of filing under Article 9, *Albany Discount* *Corp. v. Mohawk National Bank of Schenectady*, 28 N.Y.2d 222, 321 N.Y.S.2d 94, 269 N.E.2d 809 (1971).

statement in the appropriate office for recording such transactions involving East Millinocket residents. The Court, pointing to the need for commercial certainty, held that the assignee properly filed the statement in East Millinocket, since that town constituted the place of the debtor's residence at the time the security interest attached. We are persuaded that the Court came to the right result. *See also In Re Pelletier*, 5 UCC Rep.Serv. 327 (D.Me.1968).

### b.

Similarly, we cannot accept the trustee's argument that the county of the debtor's residence at the time of the filing of the financing should control. The choice of the time at which the security interest attaches to determine the place of filing is grounded in solid policy considerations. Credit checks of the debtor are routinely made then, as was the case here, and it is a logical and customary time for the verification of important facts, such as residence. We are as disinclined as other courts have been to tamper with such commercially reasonable rules. *In Re O'Donnell, supra; In Re Kane*, 1 UCC Rep.Serv. 582 (E.D.Pa.1962). *But see Schoel v. Oak Cliff Savings and Loan Association*, 21 UCC Rep.Serv. 325 (N.D. Ala.1977).

### c.

Inconveniences and seeming injustices often arise from the application of hard and fast rules, particularly in areas of commercial law involving secured transactions. Perhaps a statewide filing system is preferable, but New York State has expressly excluded mobile homes from the scope of its new Uniform Vehicle Certificate of Title Act. N.Y.Unif.Veh.Cert. of Title Act § 2102(b) (McKinney Supp.1977). Obviously, the legislature was of the view that the cost and inconvenience of county filing was more than outweighed by its greater accessibility to local merchants. As the Official Comment to U.C.C. § 9–401 points out, most credit inquiries about local businesses, farmers and consumers come from local sources. Whatever the competing merits of

alternate filing systems, the choice of a filing scheme is peculiarly based on commercial practice within a particular area. We cannot take issue with New York State's determinations in this regard. Accordingly, we affirm.