Douglas J. WOLINSKY, Esq., Trustee,

Raymond J. McQueen, Jr. and Barbara A. McQueen, Intervenors,

v.

## BRADFORD NATIONAL BANK.

Civ. A. No. 83–118.

United States District Court, D. Vermont.

Aug. 16, 1983.

Douglas J. Wolinsky, Saxer, Anderson & Wolinsky, Burlington, Vt., Trustee.

Joseph C. Palmisano, Barre, Vt., for Raymond J. McQueen, Jr. and Barbara J. McQueen.

Samuel C. Fitzpatrick, Montpelier, Vt., for Agway, Inc.

David A. Otterman, Otterman and Allen, Bradford, Vt., for Bradford National Bank.

## OPINION AND ORDER

COFFRIN, Chief Judge.

This is an appeal from an order of Bankruptcy Judge Charles J. Marro dismissing with prejudice the complaints of the trustee (appellant) and debtors as intervenors for recovery of an alleged preference. The alleged preference is based on the transfer of cattle from the debtor to the defendant Bank. The cattle were later sold at auction and the proceeds applied to a debt the debtor owed the Bank. Appellant contends the Bank did not have a perfected security interest in the cattle and as such had a preference which could be avoided by appellant-trustee. The Bankruptcy Court, 27 B.R. 717, held that the Bank had a perfected security interest and that there was consequently no preference which the appellant as trustee could avoid.

### Facts

The facts are not disputed. Debtors Raymond and Barbara McQueen are dairy farmers. For ten years before September 1, 1979, they resided in the home they owned in Orange, Vermont and leased a farm in Williamstown. On September 1, 1979, debtors leased and moved to a farm in Groton, Vermont. The lease term was for one year with an option to renew for one year. Debtors retained their home in Orange and leased it to a relative. When they moved to Groton debtors planned eventually to effect a purchase of the leased premises.

While living in Groton, the debtors, on April 11, 1980, negotiated a loan with the Bradford National Bank for $14,874.20. The note was secured by an interest in all the debtors' livestock. In an effort to perfect its security interest in the livestock, the Bank filed financing statements with the Groton Town Clerk and with the Secretary of State's Office in Montpelier. These statements listed the McQueens as debtors and their address as Groton, Vermont. Debtors signed these statements.

At the end of the year-long Groton lease the debtors did not renew but instead returned to the homestead in Orange and again leased the Williamstown farm. On April 15, 1981, the debtors negotiated a second loan with the Bank for $22,447.20. This loan replaced the first loan. Again it was secured by an interest granted to the Bank in the cattle. Financing statements bearing the debtors' mailing address as Box 28, East Barre, were filed in Williamstown and at the Secretary of State's Office.

On November 27, 1981 the debtors defaulted on their loan owing a balance of $22,596.98. With the debtors' consent and assistance, the 45 head of Holsteins, which were subject to the Bank's security interest, were sold at auction. The $20,953.00 realized was applied to the debtors' outstanding balance.

A week later, on December 4, 1981, the debtors filed their joint Petition for Relief under Chapter 3 of the Bankruptcy Code, 11 U.S.C. § 302 (1979). On that date appellant Douglas J. Wolinsky was appointed interim trustee and he remains the duly qualified and acting trustee of the estate of the debtors.

## Discussion

The sole issue is whether the Bank had a perfected security interest in the cattle. Appellant contends it did not because its financial statement filing for the April 1980 loan was ineffective. According to appellant, the statement should have been filed in the Orange Town Clerk's office; instead it was filed in the Clerk's Office in Groton. The law of Vermont provides that "[t]he proper place to file an order to perfect a security interest [in cattle] is . . . in the office of the town clerk in the town of the debtor's residence . . ." Vt.Stat.Ann. tit. 9A § 9–401(1)(a) (1966). Article 9 does not define "residence." Appellant contends that "residence" in this instance means "domicile". Once this meaning is adopted, appellant continues, it follows that the Bank's Groton filing is ineffective because Orange, not Groton, was the debtors' domicile in April 1980. Appellant contends that Groton was just a temporary residence while Orange remained the McQueens' true domicile.

■ Admittedly, the terms "residence" and "domicile" have similar meanings. They are frequently used interchangeably because they usually refer to the same place. "Domicile," however, means living in a locality with the intent to make it a fixed and permanent home, *Fuller v. Hofferbert*, 204 F.2d 592, 597 (6th Cir.1953), while "residence" simply requires bodily presence as an inhabitant in a given place. *Corwin Consultants, Inc. v. Interpublic Group of Companies*, 512 F.2d 605, 610 (2d Cir.1975). *See also Tower v. Tower*, 120 Vt. 213, 221, 138 A.2d 602 (1958); *Walker v. Walker*, 124 Vt. 172, 174, 200 A.2d 267 (1964).

To discern which of these meanings the legislature intended when it adopted Article 9 we turn to the proclamation of its Policy and Scope and to comment 3 to section 401, the section in dispute. The former provides that the underlying purpose and policy of Article 9 is to "simplify, clarify, and modernize the law governing commercial transactions." Vt.Stat.Ann. tit. 9A § 1–102(2)(a). The latter, comment 3 to subsection 401(1)(a) reads: "[t]he policy of the subsection is to require filing in the place or places where a creditor would normally look for information concerning interests created by the debtor." Vt.Stat.Ann. tit. 9A § 9–401 comment 3. Together, this comment and policy position indicate the legislature's intent to adopt a simplified, consistent system upon which creditors would rely either to secure their interest or to investigate a debtor. Appellant contends the legislature meant "domicile" when it adopted "residence" as the place of filing.[1] The Bankruptcy Court disagreed and so do we. To read "domicile" into section 401 would make the filing process more, not less, cum-

---

1. Appellant relies heavily on *Bonneau v. Russell,* 117 Vt. 134, 85 A.2d 569 (1951) for this proposition. His reliance is, however, misplaced. *Bonneau* was a pre-U.C.C. case that interpreted Vt.Rev.Stat. 47 § 1754 (Chattel Mortgage Law) which was expressly repealed by the passage of Article 9. See Acts of 1966, No. 29, § 3. Furthermore, the *Bonneau* court failed to recognize the distinction in Vermont law between residence and domicile, i.e., that an analysis of domicile contains two elements; a residence, and an intention to make the residence a permanent home. *See In re Hanrahan's Will,* 109 Vt. 108, 110, 194 A. 471 (1937). We agree with the Bankruptcy Court that *Bonneau* is not apposite to an interpretation of Article 9. Consequently we find that this, as well as Appellant's other arguments, are unpersuasive and they will not be addressed.

bersome. It would also inhibit the accuracy of investigations into a debtor's financing.

■ This is so because domicile deals not only with acts, but with states of mind. To establish a domicile the actor must have the intent to remain in the community permanently and to give up any old domiciles. *Walker,* 124 Vt. at 174, 200 A.2d 267. If filing in a debtor's domicile were to be required, a creditor would have to question the debtor about any past and present residence(s). The creditor would also have to gather information as to the debtor's intent to give up past domiciles, his intent to remain permanently in his present residence, and the possibility of moves. After questioning the debtor, this procedure would require a creditor to assess the debtor's credibility, synthesize his responses, determine his domicilary intent and file accordingly. This "domicile" scheme is hardly simpler, more consistent, or easier to follow than the system that requires that financing be filed at the town clerk's office of the debtor's residence.

We are persuaded in this regard by *In re Knapp,* 575 F.2d 341 (2d Cir.1978), that the Code eschews any scheme to complicate the filing process. In *Knapp,* the debtor changed his residence between the time the security interest attached and the time the financing statement was filed. The financing statement was filed at the proper location for his old residence. Because the debtor's future, as well as his current, address was made known to the creditor, the debtor maintained that the creditor should have filed in the county of the future residence. Citing commercial ease and certainty in choosing the proper place to file, Chief Judge Kaufman held that the debtor's residence at the time the interest attached was the proper filing locale. *Id.* at 344. Particularly, the court noted that "[t]o suggest that the express intention of the debtor respecting residence controls would need-

lessly complicate the Code's design." *Id.* at 343. Appellant's domiciliary scheme, grounded upon expressed intentions of the debtor, is the sort of complication the *Knapp* court rejected. *In re Knapp* precludes us from adopting appellant's reading of section 9–401(1)(a).

■ The plain meaning of section 401 requires filing in the town of the debtor's residence. There is no reason to suppose the legislature instead meant to adopt the more complex requirements of domiciliary filing when its express intention was to streamline filing procedures. Accordingly, we hold that the Bank properly perfected its security interest in the cattle by filing its financing statement for the April 1980 loan at the Groton, Vermont Town Clerk's Office because, at that time, Groton was the debtors' residence. Vt.Stat.Ann. tit. 9A § 9–401(1)(a).

Agway, a general creditor,[2] presents an additional challenge to Judge Marro's order. It contends that the 1980 and 1981 notes should be treated separately, and that when the 1981 note was drawn and the 1980 note and security agreement were stamped "Paid by Renewal," the bank considered the 1980 note paid and intended that the only obligation upon which it could bring an action was the 1981 note. An action on this note fails, Agway argues, because the bank failed to perfect its 1981 security interest in the cattle when it filed the security agreement in Williamstown, which was, admittedly, never a residence of the McQueens. Agway's position is that the bank's priority is void and the auction proceeds should be disbursed to the general creditors including, *a fortiori,* the bank.

We disagree. We find that the two notes represent a single obligation, that the 1980 Groton filing continued to secure the bank's interest after the 1981 renewal, and that

---

**2.** Appellee, Bradford National Bank, raises two issues we will not address. First, it questions whether Agway was properly before the Bankruptcy Court as a party to the adversary proceeding and cites Agway's failure to file a motion to intervene per Bankruptcy Rule 724.

Second, the bank asks that the court not consider Agway's appeal because it failed to file a notice of appeal. Since we have found Agway's appeal groundless on the merits, we need not address these questions.

the 1981 filing in Williamstown was superfluous.

The facts, circumstances, and language of the instruments indicate that the notes represent a single, inseparable obligation. The "Paid by Renewal" stamp shows that the 1981 note renewed the 1980 note. If it were otherwise, the bank would have marked the 1980 note and security agreement "Paid," and returned them to the McQueens. Instead, it stamped them as it did and retained possession of them intending to hold them outstanding until the 1981 renewal note had been paid.

In addition, the bank and the McQueens agreed, in the 1980 security agreement, that the collateral which secured the 1980 note would also secure "any renewals or extensions" of that note. (See # 8, 4/11/80 Security Agreement, ¶ 1 following collateral description.) Provisions like this are common. They dovetail with a settled principle that when notes are renewed the collateral which secures the original note also secures the renewals, unless the parties agree otherwise. *Robinson v. Leach,* 67 Vt. 128, 129, 31 A. 32 (1895). *See also* Vt.Stat.Ann. tit. 9A § 9–204(5).

■ From this we conclude that the 1980 Groton filing, which notified third parties that the bank had an interest in the cattle pursuant to the 1980 note and security agreement, also serves as notice that despite the renewal the bank continued to hold a perfected secured interest in the cattle. No additional filing was necessary because a duly filed financing statement, showing the same debtor, the same secured party, and the same collateral, serves to perfect a security interest pursuant to a subsequent note not originally contemplated by the parties. *Frank v. James Talcott, Inc.,* 692 F.2d 734, 738 (11th Cir.1982); *In Re Gilchrist,* 403 F.Supp. 197, 202 (E.D.Pa. 1975), *aff'd without opinion* 535 F.2d 1246 (3d Cir.1975); *see also* Vt.Stat.Ann. tit. 9A § 9–402.

Agway's position is without merit. The Bank did not have a preference which the Trustee could avoid. The court hereby affirms the Bankruptcy Court's dismissal of appellant's complaint with prejudice.