**In re HOWARDS APPLIANCE CORP.**

No. CV 87–0854.

United States District Court,
E.D. New York.

Sept. 23, 1988.

Philip Irwin Aaron, P.C. by Philip Irwin Aaron, Jericho, N.Y., for debtor.

Kane, Kessler, Proujansky, Pries & Nurnberg, P.C. by Jeffrey A. Oppenheim, New York City, for creditor Sanyo Elec., Inc.

Herzfeld & Rubin, P.C. by Leonard M. Polisar, New York City, for Unsecured Creditors' Committee.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

On August 6, 1986, Appellant/Debtor Howards Appliance Corporation ("Howards") filed a voluntary Chapter 11 petition with the United States Bankruptcy Court for the Eastern District of New York. On August 14, 1986, Appellee/Creditor Sanyo Electric Co., Inc. ("Sanyo") moved for relief from the automatic stay to enable it to foreclose on certain of Howards' inventory in which Sanyo alleged a security interest. Sanyo alleged that it had a valid and perfected security interest in all Sanyo air conditioners located in New York and New Jersey. The Bankruptcy Court (Holland, J.) granted Sanyo's motion. This appeal followed. For the reasons set forth below, the decision of the Bankruptcy Court is affirmed in part, reversed in part, and remanded.

The pertinent facts of the case are as follows. Howards began operating an appliance store in Nassau County in 1973. On March 12, 1984, Howards entered into a security agreement with Sanyo, giving Sanyo a security interest in all Sanyo air conditioners in Howards' possession or thereafter acquired from Sanyo. The se-

curity agreement also stated that "[t]he collateral will be kept at the debtor's place of business located at the address as shown at the beginning of this agreement, and that *there are no other places of business of debtor.*" (emphasis added). To perfect its security interest, Sanyo filed financing statements with the Nassau County Clerk and the New York Secretary of State on March 30, 1984.

In April 1984, Howards opened a second store located in Suffolk County, and in November 1985, Howards opened a third store, also located in Suffolk County. Sanyo never filed any financing statements with the Suffolk County Clerk. In March 1986, Howards sold the Nassau County store, and thereafter operated stores exclusively in Suffolk County. Howards permitted the new owners of its former Nassau store to continue to use the Howards trade name and continued to advertise the Nassau County location along with the Suffolk County locations in newspaper ads. Although no written notice of the sale of the Nassau location was sent to Sanyo, Sanyo's sales representative informally learned of the sale in April or March 1986 and communicated this knowledge to the credit department for the purpose of exploring the possibility of extending credit to the new owners of the Nassau County location.

In the early part of 1986, Howards began storing Sanyo air conditioners in a warehouse in New Jersey. Sanyo never received written notification of the New Jersey storage and never filed financing statements in New Jersey. However, Sanyo's shipping department learned of the new destination of the air conditioners through the common carrier and appropriately adjusted the bills of lading to reflect the change. Since the filing of the voluntary Chapter 11 petition, Howards has continued to manage the Suffolk County stores as a debtor in possession.

### The New York Air Conditioners

With respect to the New York air conditioners, the Bankruptcy Court held that a financing statement filed with the Suffolk County Clerk was not needed to perfect

Sanyo's security interest. The Court held that the financing statements filed with the Nassau County Clerk and the New York Secretary of State were sufficient to perfect air conditioners located in Suffolk County. The Bankruptcy Court, however, was only partially correct.

Under the Uniform Commercial Code, when the debtor has a place of business in more than one county, a financing statement need only be filed with the New York Secretary of State to satisfy the place of filing requirement for perfection of a security interest. N.Y.U.C.C.Law § 9–401(1)(c) (McKinney Supp.1988). Section 9–401(3) of the Uniform Commercial Code provides that, "[a] filing which is made in the proper place in this state continues effective even though the debtor's residence or place of business or the location of the collateral or its use, whichever controlled the original filing, is thereafter changed." N.Y.U.C.C.Law § 9–401(3) (McKinney Supp.1988). The Second Circuit, citing § 9–401(3), has held that, "[a] security interest, once perfected by filing, remains effective regardless of the number of times or places the debtor or the collateral moves." *In re Knapp*, 575 F.2d 341, 343 (2d Cir.1978).

Therefore, with respect to any air conditioners originally located in Nassau County and subsequently moved to Suffolk County, or any air conditioners shipped to Suffolk County while Howards operated stores in both Suffolk and Nassau Counties, the Bankruptcy Court is correct. Sanyo's security interest in these air conditioners was properly perfected by a filing with the New York Secretary of State, and it remained perfected even though Howards' place of business changed.

With respect to any air conditioners shipped to Suffolk County after the closing of Howards' Nassau County store, however, the Bankruptcy Court erred. The Second Circuit, in *Knapp*, held that the proper place for filing the financing statement is determined at the time the security interest attaches to the collateral. *Id.* at 344. Property, such as inventory, obtained subsequent to, but contemplated by the

security agreement, is called after-acquired property. The air conditioners that were shipped to the Suffolk County stores after the closing of the Nassau County store were obtained by Howards after it entered into the agreement with Sanyo, and thus are considered after-acquired property.

Under New York Law, a security interest in after-acquired property cannot attach until the debtor has acquired the collateral. *Marine Midland Bank–Eastern Nat'l Ass'n v. Conerty Pontiac–Buick, Inc.*, 77 Misc.2d 311, 317, 352 N.Y.S.2d 953, 961 (Sup.Ct. Albany County 1974). Therefore, Sanyo's security interest in these after-acquired air conditioners attached when they were received by Howards, and it is the location of Howard's business at that time that determines where Sanyo was required to file its security interest.

Section 9–401(1)(c) provides that if a debtor has a place of business in only one county of the state, financing statements must be filed with the New York Secretary of State and the County Clerk. N.Y.U.C. C.Law § 9–401(1)(c) (McKinney Supp.1988). Therefore, with respect to the air conditioners which Howards received when operating exclusively in Suffolk County, Sanyo has not complied with the steps necessary to perfect its security interest, since it never filed a financing statement with the Suffolk County Clerk. Sanyo claims, however, that Howards should be estopped from denying its presence in Nassau County since it held itself out as maintaining a Nassau location by allowing the new owners to continue using its name, by joint advertising, and through the clause in the security agreement that there are no other places of business.

Sanyo's argument is unpersuasive for two reasons. First, Sanyo cannot properly claim to have relied on Howards' allegedly misleading conduct with respect to continued ownership of the Nassau store in question, since both Sanyo's sales and credit departments had actual knowledge that the Nassau County location had been sold. Sanyo cannot assert estoppel without proving its own reliance on the alleged misleading conduct. *See Wiser v. Lawler*, 189 U.S.

260, 23 S.Ct. 624, 47 L.Ed. 802 (1903); 28 Am.Jur.2d *Estoppel and Waiver* § 80 (1966); 57 N.Y.Jur.2d *Estoppel, Ratification, and Waiver* § 56 (1986). Second, as discussed further below, with respect to the air conditioners stored in New Jersey, the Bankruptcy Code itself removes the possibility of asserting equitable estoppel against Howards by raising the status of a debtor-in-possession to that of a hypothetical lien creditor. 11 U.S.C. § 544(a); *see In re Brent Explorations, Inc.*, 31 B.R. 745, 748–49 (Bankr.D.Col.1983).

Accordingly, with respect to the New York air conditioners, the case is remanded to the Bankruptcy Court for factual determinations as to which air conditioners were either brought to the Suffolk County stores from the Nassau County store, or shipped to the Suffolk County stores before the Nassau County store closed. Sanyo has a perfected security interest in these air conditioners. Sanyo does not have a perfected security interest in any air conditioners that the Bankruptcy Court determines were shipped to the Suffolk County stores after Howards closed its Nassau County store.

*Air Conditioners Stored in New Jersey*

Howards argued in the Court below that because Sanyo never filed a financing statement in New Jersey, it does not have a perfected security interest in the air conditioners located in that state. The Bankruptcy Court held that the doctrine of equitable estoppel applies to prevent Howards from claiming that Sanyo's security interest in the New Jersey air conditioners was not perfected since Sanyo had no imputable knowledge that the goods in fact were being stored in New Jersey.

The Bankruptcy Court relied upon several cases which applied the doctrine of estoppel in bankruptcy proceedings. In *Bank of Marin v. England*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966), the Supreme Court held that, "[t]here is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." *Id.* at 103, 87 S.Ct. at 277. In addition, some courts have applied the doc-

trine of estoppel to prevent a debtor from denying that a security interest was perfected. *See, e.g., In re Rule*, 38 B.R. 37, 40–41 (Bankr.D.Vt.1983). Other courts have applied the doctrine of estoppel to prevent the bankruptcy trustee or a third party from denying the attachment of a security interest. *See, e.g., In re Pubs, Inc.*, 618 F.2d 432 (7th Cir.1980). Thus, the doctrine of estoppel is clearly applicable in bankruptcy proceedings.

The application of the doctrine of estoppel in bankruptcy proceedings is not, however, without limits. In *Johnson v. First Nat'l Bank*, 719 F.2d 270 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984), the Eighth Circuit analyzed the limitation on bankruptcy courts' equitable powers and held that, "[a]lthough a bankruptcy court is essentially a court of equity ... its broad equitable powers may only be exercised in a manner which is consistent with the provisions of the [Bankruptcy] Code." *Id.* at 273; *see also, In re J.M. Wells, Inc.*, 575 F.2d 329, 331 (1st Cir.1978); *In re Pirsig Farms, Inc.*, 46 B.R. 237, 240 (D.Minn.1985); 4 Collier on Bankruptcy ¶ 105.02 at 105–7, 8 (15th ed.) (a court must not "ignore, supercede, suspend or even misconstrue the [Bankruptcy Code] or the rules"). Thus, if the application of estoppel would contravene a section of the Bankruptcy Code, such application would be inappropriate.

In the Court below, Howards argued that the application of estoppel in this case would contravene section 544(a) of the Bankruptcy Code. Section 544 provides that:

(a) The trustee shall have, as of the commencement of the case, and *without regard to any knowledge of the trustee* or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple

contract could have obtained such a judicial lien, whether or not such a creditor exists;

11 U.S.C. § 544(a) (emphasis added). The phrase "without regard to any knowledge of the trustee" has been interpreted to mean that the trustee can avoid a lien under section 544(a) even where the trustee had actual notice of the lien's existence. *In re Measure Control Devices, Inc.*, 48 B.R. 613, 615 (Bankr.E.D.N.Y.1985). The trustee, under this section, is accorded the status of a "hypothetical lien creditor" who did not have notice of the improperly filed security interest and thus can act as that lien creditor to avoid the security interest. *Id.; In re Johnson*, 28 B.R. 292, 296 (Bankr.N.D.Ill.1983). Therefore, a trustee would be able to avoid Sanyo's unperfected security interest, even if the trustee had actual knowledge of the interest. Howards, as debtor in possession, has the same rights and powers as a trustee. 11 U.S.C. § 1107(a). Therefore, Howards has the power, just as would a trustee, to avoid Sanyo's unperfected lien, even though Howards had prior knowledge of the lien's existence.

Several courts have examined the applicability of the doctrine of estoppel with respect to the lien avoidance powers of section 544(a). In *In re Brent Explorations, Inc.*, 31 B.R. 745 (Bankr.D.Col.1983), the bankruptcy court held that: "Section 544(a) vests the trustee (or the debtor-in-possession) with the rights of an ideal creditor, without knowledge or notice. One of the purposes for providing the ideal creditor status is to prevent such defenses as estoppel from being raised against the trustee." *Id.* at 748–49; *see also, In re Pirsig Farms, Inc.*, 46 B.R. 237, 242 (D.Minn.1985); *In re Measure Control Devices, Inc.*, 48 B.R. 613, 615 (Bankr.E.D.N.Y.1985); *In re I.A. Durbin, Inc.*, 46 B.R. 595, 602 (Bankr.S.D.Fla.1985). In *In re Wiggs*, 87 B.R. 57 (Bankr.S.D.Ill.1988), the court permitted a debtor-in-possession to defeat the lien of a creditor who was unable to perfect the lien due to the debtor's wrongful conduct. The court held that a debtor-in-possession's avoidance powers are

unaffected by improper conduct of the debtor or equitable considerations.

The reasoning of the *Brent* and *Wiggs* Courts is sound. The framers of the code designed this hypothetical lien creditor to have all the characteristics necessary to avoid a fellow creditor's lien. In fact, knowledge on the part of this ideal creditor that a prior lien existed has been explicitly removed as a factor for consideration. This evinces a conscious decision by Congress to favor the trustee over unperfected creditors, regardless of the particular equities of the case. Such a decision by Congress is reasonable in light of the ability of creditors, selling after-acquired property, to take precautionary measures to ensure that the property is delivered to the debtor at a location where the creditor has filed its security interest.

■ The notion that creditors should exercise diligence in connection with the perfection of a security interest is not novel. *See In re J.A. Thompson & Son*, 665 F.2d 941, 950–51 (9th Cir.1982); *In re Marta Group, Inc.*, 33 B.R. 634, 639 (Bankr.E.D. Pa.1983). In the case at bar, Sanyo could have protected its interest in after-acquired property by establishing a policy whereby its shipping department would notify its credit department before addressing bills of lading to unapproved shipping destinations. The burden of this type of precautionary behavior when after-acquired property is involved is minimal compared to the heavier burden on third party creditors who may be potentially damaged when a proper filing has not been completed.

The cases relied upon by the Bankruptcy Court to support its application of the doctrine of estoppel in no way undermine the conclusion reached by this Court. *In re Rule*, 38 B.R. 37 (Bankr.D.Vt.1983), and *In re Chase*, 37 B.R. 345 (Bankr.D.Vt.1983), involved debtors who were not debtors in possession and therefore could not employ the lien avoidance powers of section 544(a). *See Rule*, 38 B.R. at 41; *Chase*, 37 B.R. at 347. *In re Pubs*, 618 F.2d 432, also cited by the Court below, was decided under the Bankruptcy Act before it was superseded by the Bankruptcy Code, which considera-

bly expanded the powers of a trustee. *See* 4 Collier on Bankruptcy ¶ 544.02 (15th Ed.). Thus, reliance on *In re Pubs* to determine the trustee's powers under section 544(a) is inappropriate.

Since Sanyo did not file financing statements in New Jersey, as required by New Jersey law, N.J.Stat.Ann. § 12A:9–302(1) (West Supp.1988), Sanyo has as unperfected security interest in the air conditioners located there. The doctrine of estoppel cannot prevent Howards from avoiding Sanyo's interest under Section 544(a).

The decision of the Bankruptcy Court is affirmed in part and reversed in part. The case is remanded to the Bankruptcy Court for proceedings consistent with this opinion. The Clerk of the Court is directed to return the entire record to the Bankruptcy Court.

SO ORDERED.