Trisha Louise CONLON, by next friend,
Judy Conlon, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary of
Health and Human Services,
Defendant.

Civ. A. No. 3–81–0624–G.

United States District Court,
N. D. Texas,
Dallas Division.

March 19, 1982.

Herbert H. Landau, Dallas, Tex., for plaintiff.

Martha Joe Stroud, Asst. U.S. Atty., Dallas, Tex., for defendant.

## MEMORANDUM ORDER

PATRICK E. HIGGINBOTHAM, District Judge.

This is an appeal from a denial of survivor's benefits under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). The claimant, Trisha Louise Conlon ("Trisha"), is a twelve-year-old girl whose mother, Judy Conlon ("Judy"), has brought suit as next friend claiming that she is entitled to survivor's benefits because she is the "child," as that term is defined in the Social Security Act, of the late Michael Conlon ("Michael"). The parties, Trisha Conlon and the Secretary of Health and Human Services ("the Secretary"), have both filed motions for summary judgment.

On January 27, 1976, Trisha's mother, Judy, applied for benefits on behalf of her daughter alleging Trisha was a legitimate child of the wage earner. A notice of benefit award was issued on March 17, 1976. On April 7, 1976, Christine M. Conlon ("Christine"), who was married to Michael from April 4, 1970 until his death on October 20, 1975, received notice of the award to Trisha. Christine protested this decision and it was overturned on October 12, 1976. Judy requested reconsideration and it was granted on March 24, 1977. The Social Security Administration ("the Administration") granted Judy's request for reconsideration based on a decree of Domestic Relations Court Number 193 of Dallas County purporting to dissolve the "marriage" of Judy and Michael and declaring Trisha to be a child of that marriage, despite the fact the Administration questioned "whether the purpose of the divorce was to terminate an unsuccessful marriage, or primarily to es-

tablish that a marriage had existed and that Trisha L. Conlon was a natural child of such marriage." (Tr. 192). Christine requested a hearing concerning Trisha's status, which was held before an Administrative Law Judge ("ALJ") on October 7, 1977. The ALJ took the testimony of Judy, Christine and Michael's mother, Lena Conlon, and reviewed a number of documents including the decree of the domestic relations court. Although the ALJ found the "factual foundation for a valid marriage to be remarkably weak," he determined that the decree of the domestic relations court required him to find that Trisha was entitled to benefits as Michael's child.

The Appeals Council reversed the ALJ, because it found the Texas decree was not binding on the Administration. The Secretary adopted the opinion of the Appeals Council as his final decision on February 25, 1981.

There are three provisions of the Social Security Act (the "Act") under which Trisha might qualify for survivor's benefits as Michael's child. First, Trisha might qualify for benefits under 42 U.S.C. § 416(h)(2)(A), § 216(h)(2)(A) of the Act, which provides benefits to one who would be entitled to inherit personal property under the intestacy laws of the domicile of the deceased worker at the time of his death (Vermont). Second, Trisha might qualify under 42 U.S.C. § 416(h)(3)(C)(i)(II), Section 216(h)(3)(C)(i)(II) of the Act, a provision which entitles one to benefits who has been decreed by a court to be the child of a deceased worker prior to his death. Finally, Trisha might qualify as the legitimate offspring of a valid common-law marriage between Michael and Judy under 42 U.S.C. § 402(d)(3), § 202(d)(3) of the Act. I turn now to consider whether Trisha qualifies for benefits under any of these provisions.

I. *A "Child" for Purposes of 42 U.S.C. § 416(h)(2)(A).*

Section 216(h)(2)(A) of the Social Security Act, 42 U.S.C. § 416(h)(2)(A) provides:

(2)(A) In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law *as would be applied* in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the court of the State in which he was domiciled at the time of his death, or, if such insured individual is or was not so domiciled in any State, by the courts of the District of Columbia. Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such. (emphasis supplied).

For Trisha to qualify for survivor's benefits under this provision, she must demonstrate that she would have been entitled to inherit Michael's personal property under the intestacy laws of Michael's state of domicile, Vermont.

On March 27, 1970, Judge Snodgrass of Domestic Relations Court Number 193 of Dallas County entered a decree relevant to the determination of whether Trisha qualifies for benefits under Section 216(h)(2)(A). The decree provides:

### JUDGMENT

ON THIS, the 27 day of March, 1970, came on to be heared (sic) the above styled and numbered cause, and came JUDY ELLIS CONLON, in person and by attorney and announced ready for trial. MICHAEL JOHN CONLON, although duly cited to appear and answer, as shown by the citation on file herein for the period of time required by law, failed to appear.

And, it further appearing to the Court, from an inspection of the records and from the evidence that it has jurisdiction, and that the Petition has been on file in this Court for at least sixty (60) full days, and that JUDY ELLIS CONLON has been an actual bona fide inhabitant of the State of Texas and the County of

Dallas, for a period of more than twelve months next preceeding (sic) the filing of the Petition herein, and no jury having been demanded by either of the parties hereto, the Court proceeded to hear aforesaid cause; and thereupon all matters of fact, and of law were submitted to the Court, and the Court having examined the pleadings on file, and having heard the evidence and arguments presented, *is of the opinion that the material facts alleged in the Petition for Divorce filed by JUDY ELLIS CONLON, have been proven by full and satisfactory evidence*, and that JUDY ELLIS CONLON is entitled to a divorce from MICHAEL JOHN CONLON.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court that the bonds of matrimony heretofore existing between JUDY ELLIS CONLON and MICHAEL JOHN CONLON be and the same are hereby dissolved, and JUDY ELLIS CONLON is hereby divorced from MICHAEL JOHN CONLON.

*The Court finds that there was one child born of this marriage, to-wit: TRISHA LOUISE CONLON*, born at 9:00 o'clock a. m. on the 17th day of March, 1969, at Methodist Hospital, Dallas, Dallas County, Texas, and shown of record under registrar's file number 5381 of the Texas State Bureau of Vital Statistics;

The Court further finds that the name of the said minor child was erroneously recorded as TRISHA LOUISE ELLIS, and should have been recorded as TRISHA LOUISE CONLON; therefore,

It is ORDERED, ADJUDGED AND DECREED by the Court that the name of the said minor child, TRISHA LOUISE ELLIS, be and the same is hereby changed to TRISHA LOUISE CONLON.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the custody of the said minor child herein, TRISHA LOUISE CONLON, be and the same is hereby granted to JUDY ELLIS CONLON, and that MICHAEL JOHN CONLON, shall have the right of reasonable visitation with said child.

SIGNED and ENTERED this the 27 day of March, 1970.

/s/ HUGH SNODGRASS
JUDGE

(emphasis supplied). (Tr. 172–3).

■ Two aspects of the decree are important to the question of whether Trisha qualifies as Michael's "child" under 216(h)(2)(A). First, the decree implicitly accepts the existence of a valid common-law marriage between Judy and Michael. The decree does not explicitly rule on the existence of a marriage, but it recites that "the court is of the opinion that the material facts alleged in the Petition for divorce filed by JUDY ELLIS CONLON, have been proven by full and satisfactory evidence, and that JUDY ELLIS CONLON is entitled to a divorce from MICHAEL JOHN CONLON," (Tr. 172). One of the allegations in the petition is "Wife (Judy) and Husband (Michael) were married on or about the fifteenth day of June, 1968 ..." (Tr. 169). Before granting a divorce a Texas court must find that a marriage existed and this language in the decree indicates that Judge Snodgrass so found. *Ex parte Threet*, 160 Tex. 482, 333 S.W.2d 361 (1960). If under Vermont law the decree (1) establishes the existence of a valid common-law marriage between Michael and Judy and (2) if Vermont employs the presumption that Trisha was the issue of that marriage, Vermont would conclude that Trisha was entitled to inherit Michael's intestate personal property as the legitimate issue of that marriage. A second important aspect of the decree is the court's finding that "there was one child born of the marriage to-wit: Trisha Louise Conlon," (Tr. 173). If Vermont recognized this aspect of the decree, Trisha is entitled to inherit Michael's personal property under its intestacy laws.

A. *Would Vermont be Required to Give the Texas Decree Full Faith and Credit?*

■ The full faith and credit clause of the Constitution directs that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State," U.S.Const.

Art. IV, § 1. The full faith and credit which must be given to judicial proceedings of other states in which intra-family disputes are adjudicated is limited by the doctrine of "divisible divorce." *Estin v. Estin*, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1947). Under this doctrine, even if a court which is entering a decree only has personal jurisdiction over either the husband or the wife, a state is bound under full faith and credit to recognize the decree insofar as it terminates their "marital status." *Id.* at 546, 68 S.Ct. at 1217. However, a state is not required by full faith and credit to recognize other "incidents" of the decree where the entering court lacked personal jurisdiction over one of the parties. The court has not uncovered any authority which directly addresses whether a state is bound by full faith and credit to recognize a judgment by a court which gives a child inheritance rights in the estate of a party over which the court lacked personal jurisdiction. The cases do teach, however, that full faith and credit does not require a state to recognize a judgment of a court which affects the property rights of an absent party. *Estin v. Estin*, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1947) (alimony); *Rice v. Rice*, 336 U.S. 674, 69 S.Ct. 751, 93 L.Ed. 957 (1949) (ex-wife's inheritance rights); *Meredith v. Meredith*, 226 F.2d 257 (D.C.Cir. 1955) (wife's right to maintenance). It follows that Vermont is not required to recognize the Texas decree insofar as it would give to Trisha the right to inherit Michael's personal property by its laws of intestate succession if the Texas court did not acquire personal jurisdiction over Michael.

■■■ Michael was personally served in Vermont pursuant to Rule 108 of Texas Rules of Civil Procedure, but he entered no appearance and did not otherwise contest the divorce proceedings. Service pursuant to Rule 108 did not give the Texas court

personal jurisdiction over Michael, *Placid Investments Ltd. v. Girard Trust Bank*, 662 F.2d 1176, 1179 (5th Cir. 1981), and the Texas court had no other basis for personal jurisdiction over Michael.[1] In sum, under the doctrine of "divisible divorce," Vermont would be required to give full faith and credit to the decree of the Texas Domestic Relations Court insofar as it terminated the "marital status" of Michael and Judy, because Judy was domiciled in Texas at the time the decree was entered, but this is all full faith and credit requires because the Texas court did not have personal jurisdiction over Michael when it entered the decree.

**B.** *Vermont Recognition of the Decree Apart from its Obligations under Full Faith and Credit.*

■■■ Vermont has not directly addressed the question of whether an *ex parte* judgment of a court in another state can affect the disposition of an absent party's intestate property in Vermont. Vermont recognizes *ex parte* divorces insofar as they terminate "marital status." *Walker v. Walker*, 124 Vt. 172, 200 A.2d 267 (1968). Vermont also recognizes that where a divorce proceeding in another jurisdiction is conducted *ex parte*, "this overcomes the presumption [that the court entering the decree had] *full* jurisdiction of the parties. *Id.* at 269. Finally, Vermont recognizes that a determination of the marital status of two parties is not a determination of other incidents of marriage. *Morris v. Morris*, 118 Vt. 270, 108 A.2d 258, 259 (1954). This authority persuades me that Vermont would not choose to recognize the Texas decree as giving Trisha the right to inherit Michael's intestate property, it not being constitutionally obligated to do so.

---

1. The claimant has suggested that the Texas court might have acquired personal jurisdiction over Michael under the Texas long-arm statute, Tex.Rev.Civ.Stat.Ann. 2031b (Vernon 1982). However, the record indicates service was accomplished under Rule 108, rather than 2031b. (Tr. 174–177). In addition, it does not appear that a Texas court would have been authorized to acquire personal jurisdiction over a putative father under 2031b. *Postell v. Texas Dept. of Public Welfare*, 549 S.W.2d 425 (Tex.Civ.App. —Fort Worth, 1977, no writ); *Taylor v. Texas Dept. of Public Welfare*, 549 S.W.2d 422 (Tex. Civ.App.—Fort Worth, 1977, writ ref'd n.r.e.).

II. *A "Child" for Purposes of 42 U.S.C. § 416(h)(3)(C)(i)(II).*

In 1965 the Congress amended the Social Security Act by adding the following provision:

(3) An applicant who is the son or daughter of a fully or currently insured individual, but who is not (and is not deemed to be) the child of such insured individual under paragraph (2) of this subsection, shall nevertheless be deemed to be the child of such insured individual if: ...

(C) In the case of a deceased individual—

(i) such insured individual—

(II) *had been decreed by a court to be the father of the applicant, ...* and such ... court decree ... was made before the death of such insured individual, ... (emphasis supplied). 42 U.S.C. § 416(h)(3)(C)(i)(II). § 216(h)(3)(C)(i) of the Social Security Act.

I have located no decisions which address the deference to be given state court decrees under § 216(h)(3)(C)(i)(II). The legislative history of the statute is limited. The Senate Report concerning the addition of § 216(h)(3) to the Social Security Act provides:

### 10. DEFINITION OF CHILD

Under present law, whether a child meets the definition of a child for the purpose of getting child's insurance benefits based on his father's earnings depends on the laws applied in determining the devolution of intestate personal property in the State in which the worker is domiciled. The States differ considerably in the requirements that must be met in order for a child born out of wedlock to have inheritance rights. In some States a child whose parents never married can inherit property just as if they had married; in others such a child can inherit property as the child of the man only if he was acknowledged or decreed to be the man's child in accordance with requirements specified in the State law; and in several States a child whose parents never married cannot inherit his father's intestate property under any circumstances. As a result, in some cases benefits must be denied where a child is living with his mother and father in a normal family relationship and where neither the child nor his friends and neighbors have any reason to think that the parents were never married.

The committee believes that in a national program that is intended to pay benefits to replace the support lost by a child when his father retires, dies, or becomes disabled, whether a child gets benefits should not depend on whether he can inherit his father's intestate personal property under the laws of the State in which his father happens to live. The committee has therefore included in the bill a provision under which benefits would be paid to a child on the earnings record of his father, even though the child cannot inherit the father's intestate property, if the father ... S.Rep.No. 404, Reprinted in [1965] Cong. & Ad.News 1943, 2049–50.

■ This Report indicates that Congress added § 216(h)(3) to eliminate the inequity which resulted from the application of the various state intestacy laws under § 216(h)(2)(A). There is no indication in the Report that the Secretary is bound to accept the finding of a state court concerning a family relationship because the limits of a state's intestacy law no longer control.

■ The statute's language does not suggest that the Secretary is bound by a decree purporting to establish a child's paternity when the putative father did not participate in the paternity determination.

In sum, neither the language nor the legislative history of § 216(h)(3)(C)(i)(II) indicate that the Secretary is bound to accept a decree purporting to establish a child's paternity where the court entering the decree lacked jurisdiction over the putative father.

III. *Legitimate Offspring of a Valid Common-Law Marriage.*

42 U.S.C. § 402(d)(1), (3), § 202(d)(1), (3) of the Act provide in relevant part:

(d)(1) Every child (as defined in section 416(e) of this title) of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual, of such child—. . .

(C) was dependent upon such individual—

(3) A child shall be deemed dependent upon his father or adopting father or his mother or adopting mother at the time specified in paragraph (1)(C) of this subsection unless, at such time, such individual was not living with or contributing to the support of such child and—

(A) such child is neither the legitimate nor adopted child of such individual, or

If Trisha is the issue of a valid common-law marriage between Michael and Judy, she would be entitled to benefits as a legitimate child under § 202(d)(3).

 There is, however, substantial evidence to support the finding of the ALJ that a valid common-law marriage did not exist. The three requirements for a valid common-law marriage in Texas (the place the claimed marriage was "celebrated") are as follows: (1) the parties must mutually agree that they would thenceforth be husband and wife; (2) the parties must cohabit; and (3) the parties must hold each other out as man and wife. *Morris v. Morris,* 463 S.W.2d 295 (Tex.Civ.App.—Houston 1971, no writ); *Rosales v. Rosales,* 377 S.W.2d 661 (Tex.Civ.App.—Corpus Christi 1961, no writ). Based on the record developed at the hearing before the ALJ, the Appeals Council concluded that Judy had not provided sufficient evidence to support the existence of such a marriage. (Tr. 7). The ALJ reached the same conclusion. (Tr. 35).[2] There is substantial evidence to support this conclusion.[3] Although Texas law contemplates circumstantial proof of the agreement element of a common-law marriage, Judy's testimony that she and Michael lived together for "about two weeks" (Tr. 82) hardly compels the inference that they agreed to become husband and wife. There is evidence that the parties cohabited, but the only evidence which Judy introduced to demonstrate they "held one another out" as man and wife was her own testimony that

2. Although the ALJ concluded that "it is quite apparent that even under Texas law no marriage existed," he decided to defer to the decree of the domestic relations court which divorced Michael and Judy as establishing the existence of this marriage.

3. The Secretary has promulgated regulations which specify the best evidence to support the existence of a common-law marriage. These regulations provide as follows:

§ 404.726 Evidence of common-law marriage.

(a) General. A "common-law marriage" is one considered valid under certain State laws even though there was no formal ceremony. It is a marriage between two persons free to marry, who consider themselves married, live together as man and wife, and, in some States, meet certain other requirements. We will ask for the evidence described in this section.

(b) Preferred evidence. Preferred evidence of a common-law marriage is—

(1) If both the husband and wife are alive, their signed statements and those of two blood relatives;

(2) If either the husband or wife is dead, the signed statements of the one who is alive and those of two blood relatives of the deceased person; or

(3) If both the husband and wife are dead, the signed statements of one blood relative of each;

NOTE: All signed statements should show why the signer believes there was a marriage between the two persons. If a written statement cannot be gotten from a blood relative, one from another person can be used instead.

(c) Other evidence of common-law marriage. If you cannot get preferred evidence of a common-law marriage, we will ask you to explain why and to give us other convincing evidence of the marriage. We may not ask you for statements from a blood relative or other person if we believe other evidence presented to us proves the common-law marriage. 20 C.F.R. § 404.726 (1981).

No evidence of this sort was introduced at any time during the proceedings on Trisha's claim.

"Mike was introduced to friends as mine." (Tr. 89).

In sum, the Secretary was supported by substantial evidence in his determination that as a factual matter no common-law marriage existed between the parties.

### Conclusion

Trisha Louise Conlon does not qualify as Michael's "child" for purposes of the Social Security Act. Accordingly, the Secretary's motion for summary judgment is GRANTED.