## Marjorie H. Walker v. Lynn H. Walker

[ 200 A.2d 267 ]

February Term, 1964

Present: Shangraw, Barney, Smith and Sylvester, JJ. and Daley, Supr. J.

Opinion Filed April 7, 1964

*Fitts & Olson* for the libellant.

*Bloomer & Bloomer* and *Frederick J. Fayette* for the libellee.

**Barney, J.** The libellee and former husband takes the position that his Nevada divorce bars a suit by the libellant, his former wife, for a Vermont divorce and alimony award. The trial court found the libellee's alleged Nevada domicile deficient and that divorce invalid. It then proceeded with the libellant's petition to alter her divorce from bed and board granted in 1956 to an absolute divorce. The divorce was granted and an order issued requiring payment of suit money by the libellee and a division of property between the parties.

The libellee's appeal is directed solely at the trial court's determination that his Nevada divorce was not entitled to full faith and

credit when challenged by his wife in the jurisdiction of her domicile. This immediately narrows the case to the single issue of the vulnerability of the libellee's alleged domicile in Nevada for divorce purposes. It was on this issue that the lower court found the jurisdiction of the Nevada court defective.

It is settled constitutional law that the doctrine of full faith and credit does not bar relitigation of the issue of domicile as the jurisdictional basis of an ex parte divorce. *Williams* v. *North Carolina*, 325 U.S. 226, 65 S.Ct. 1092, 1096, 89 L.Ed. 1577, 157 A.L.R. 1366. See Note, Divisible Divorce, 76 Harv. L. Rev. 1233, 1234-6 (1963).

The Nevada decree itself, an exhibit in the case, recites that its jurisdiction is based upon a finding that the libellee had acquired a Nevada domicile. It also shows the proceeding to have been ex parte, the libellant, defendant in that action, having been defaulted for want of appearance, she having been served outside Nevada. This overcomes the presumption of full jurisdiction of the parties that plagued the case of *Cook* v. *Cook,* 116 Vt. 374, 76 A.2d 593, reversed 342 U.S. 126, 72 S.Ct. 157, 96 L.Ed. 146, remand 117 Vt. 173, 86 A.2d 923. The lower court here could properly reach the question of Nevada domicile. *In re Hanrahan's Will,* 109 Vt. 108, 118, 194 Atl. 471.

That court disposed of the issue of Nevada domicile adversely to the libellee by finding that the libellee went to Nevada for the sole purpose of getting an absolute divorce from the libellant. The court further found that, in accordance with plans made before the trip, the libellee was accompanied to Nevada by a Vermont woman in order that they might be married as soon as the libellee was divorced. According to the findings, the libellee arrived in Nevada January 14, 1960, filed for divorce on February 29, 1960, was granted an ex parte absolute decree on April 1, 1960, got married that same day, and within three days was on his way back to Vermont, where he has resided ever since. The court found that the libellee took up no employment or business interests in Nevada, but during the whole period relevant to this litigation continued to maintain his business and property interests in Vermont, including a hardware business in Manchester, Vermont, of which he is president and owner of sixty-six out of sixty-eight outstanding shares. He gave Manchester Depot,

Vermont, as his residence on his 1959 United States income tax return. On the basis of these and other findings the trial court concluded that the libellee's affidavit and sworn testimony to the Nevada court that he intended to make Nevada his domicile was false and fraudulent, and that he never was a bona fide domiciliary of the state of Nevada.

The libellee, citing *Morris* v. *Morris,* 118 Vt. 270, 271, 108 A.2d 258 correctly points out that the burden is upon the libellant to overcome the presumption that the Nevada decree was jurisdictionally valid. The libellant procured the necessary finding to that effect in this case, but the libellee says there is no evidence to support such a finding. With respect to the question of Nevada domicile, the libellee says that, in particular, the finding that the libellee's only reason and purpose for going to Nevada was to get an absolute divorce from the libellant is not supported by the evidence. He correctly assesses this finding as negating a purpose to acquire a Nevada domicile. However, he accepts without challenge the findings relating to the libellee and his companion travelling to Nevada, marrying on the day of the divorce and returning to Vermont to reside there together.

Domicile is a concept which is important in many legal relations and, although it is a single doctrine, inevitably some of its definitive aspects show variations as its application differs. See 28 C.J.S. Domicile §1, p. 2, and cases cited. In divorce matters in this jurisdiction domicile is defined as a place where a person lives or has his home, to which, when absent, he intends to return, and from which he has no present purpose to depart. *Tower* v. *Tower,* 120 Vt. 213, 221, 138 A.2d 602. The two elements of domicile are residence and intention. *In re Hanrahan's Will, supra,* 109 Vt. 108, 116, 194 Atl. 471. To make a change in domicile effective there must be a move to the new residence and dwelling there, coupled with an intention of remaining there indefinitely. Neither residence alone, nor intention, without more, is enough. *Miller* v. *Miller,* 88 Vt. 134, 136, 92 Atl. 9, L.R.A. 1915D, 852. An essential ingredient of the intent to acquire a new domicile is the intent to give up the old domicile. *Town of Georgia* v. *Town of Waterville,* 107 Vt. 347, 352, 178 Atl. 893, 99 A.L.R. 453.

The troublesome aspect of domicile is that it deals not only with acts, but with states of mind. This is difficult enough, but courts must also recognize that legal consequences may tempt parties to seek

advantage by misstating intentions and engaging in calculated actions to give apparent support to those misstated intentions. The fact-finding aspects of domicile may then become subtle, indeed. But where the structure of domicile change is fabricated and a discrepancy appears, the situation may be likened to the discrediting effect of a disproved alibi, yielding unfavorable inferences as to motives and intentions.

■ It is not that the motive in moving may be to take advantage of more liberal divorce laws that frustrates the attempt to alter domicile. The reason for the change will have no bearing on the matter if there is a valid intention to establish a new domicile. *Peff v. Peff,* 2 N.J. 513, 67 A.2d 161, 164. But such a purpose may well bear on the question of the validity of the intention to unconditionally assume the new domicile. *Elwert v. Elwert,* 196 Or. 256, 270-71; 248 P.2d 847, 36 A.L.R.2d 741. 17A Am. Jur. Domicile §30, p. 219.

Furthermore, this jurisdiction has an advantage over the rendering forum. Evidence of conduct subsequent to the Nevada decree is available to test the validity of the expressed domiciliary intent. In this connection we have the precipitous return to Vermont following the issuance of the Nevada decree. But the insincerity of the libellee's claim of domicile in Nevada is most plainly revealed by the fact that he travelled to Nevada with a Vermont resident, married her on the day his decree was handed down, and made that hasty return to Vermont to reside with her. What rational trier of fact could conclude that there ever was an intention to assume a permanent Nevada domicile, or that the Vermont domicile ever was unconditionally abandoned? The facts here are amazingly similar to those in *Williams* v. *North Carolina, supra,* and we, like the North Carolina court, find the Nevada decree to be without jurisdictional foundation.

For six months prior to going to Nevada the libellee lived in a room in Granville, N. Y., on the Vermont-New York border. He registered his car there and paid a New York state income tax. He testified that he made this move so as to acquire a New York domicile for divorce purposes. The court reported all this in the findings, and, in addition, found that the libellee did not vote or register to vote in New York or pay a poll tax there. Although these things are true, the libellee points out that at that time there was no occasion for him to vote or register to vote, and that New York has no poll tax. He

feels that the trial court may have drawn an inference that he failed to perform some of these things and that they were essential to establish bona fide residence. He also feels that the trial court did not give him credit for steady occupancy of his Granville quarters.

The basic difficulty here is that his attempt at a New York domicile is, by his subsequent actions, infected with the same weakness that defeats the Nevada domicile. Correction of the findings in the manner desired by the libellee, and giving him the benefit of the most favorable inferences therefrom, assuming that he is entitled to all this, will not help. The record is clear that the libellee was willing to divest himself of the attributes of Vermont residence only in the most temporary manner, and that he never had that essential intention toward Vermont expressed as *animus non revertendi* which is a prerequisite to establishing a domicile anywhere else. *Rice* v. *Rice,* 134 Conn. 440, 446; 58 A.2d 523.

Moreover, whatever his activities were in New York, they did not create an intention to be domiciled in Nevada. The defect of the Nevada divorce decree is that there was no valid domicile established in that state. It is only that decree which is offered, unsuccessfully, as a barrier to these proceedings.

*Judgment affirmed.*