# Bernard and Beverly Piche v. Department of Taxes

[565 A.2d 1283]

No. 87-105

Present: Allen, C.J., Peck, Gibson and Mahady, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed January 20, 1989

Motion for Reargument Denied July 31, 1989

*King & King*, Waitsfield, for Plaintiffs-Appellants.

*Mary L. Bachman*, Montpelier, for Defendant-Appellee.

**Allen, C.J.** Taxpayers and the Vermont Department of Taxes both appeal from an order of the Washington Superior Court affirming an assessment of state income taxes for the years 1981, 1982 and the first half of 1983 and reversing a 25% penalty imposed against Mrs. Piche's 1981 tax return for failure to timely pay any state income taxes. We affirm in part and reverse in part.

Throughout 1980 taxpayer Bernard Piche was both a resident and domiciliary of Vermont. In December, 1980, Bernard and his wife, Beverly Piche, separated. One week later, Bernard accepted employment with the Military Sealift Command and was sent to Norfolk, Virginia, via Bayonne, New Jersey, by his employer.

Bernard Piche spent approximately one month in Virginia loading his assigned ship, the U.S.S. *Riegel*, and left port with the ship in early February of 1981. In early April he received injuries while aboard and returned to his home at 41 Barrett Street in South Burlington, Vermont. On April 24, 1981, pursuant to a temporary restraining order, Mr. Piche was prohibited from remaining at the Barrett Street address. Upon being served with the restraining order, Mr. Piche moved into his grandmother's home in Winooski. He remained there for five weeks while recovering from his injuries. When fully recovered, he returned to his ship in the Philippines.

For the next two years, Mr. Piche worked on board the *Riegel* while it was both in port and at sea. During the period of his employment on the *Riegel* he spent some of his free weekends at his brother-in-law's home in Richmond, Virginia. Mr. Piche's stay in Virginia was for the purpose of working there, and he intended to remain there as necessary for his employment. The Commissioner found that when he left Vermont in 1980, Mr. Piche did not intend to abandon his Vermont domicile and, in fact, did not abandon it during the years in question.

In June of 1983, Mr. Piche requested a transfer to Florida, which his employer granted. He was assigned to a new ship,

the U.S.S. *Vanguard,* until his resignation at the end of November.

Between the time Mr. Piche first left Vermont in 1980, and when he reconciled with his wife in January of 1984, he made five trips to Vermont. The first was in 1981 after the injury received while aboard the *Riegel.* He returned again in December of 1982 at which point he spent about a week in Winooski at his grandmother's house. His last three visits to Vermont occurred between June and December of 1983.

Throughout his employment with the Merchant Marine, Mr. Piche's employment records listed 41 Barrett Street, South Burlington, Vermont, as his permanent and emergency address. Mrs. Piche received mail for Mr. Piche at this address, including mail sent from his employer.

During the years in question, Mr. Piche was registered to vote in Vermont and maintained banking arrangements in Vermont, Florida and the Virginia area. The Piches' federal income tax returns for the years 1981, 1982 and 1983 were filed jointly as a married couple and listed 41 Barrett Street as their home address. At no time during this period did Mr. Piche file any income tax returns with the State of Virginia.

In their appeal to the Washington Superior Court,* the Piches challenged the Commissioner's conclusions that Mr. Piche was a resident and domiciliary of Vermont during the years in question and was therefore under an obligation to pay Vermont income taxes. They also challenged the assessment of the 25% penalty against Mrs. Piche's 1981 tax return. The superior court affirmed the Commissioner's holding that Mr. Piche was domiciled in Vermont in 1981, 1982 and the first half of 1983 and reversed the assessment of the 25% penalty.

Taxpayers first contend that as a matter of law the facts as found by the Commissioner established Mr. Piche's state of domicile as Virginia and not Vermont during the years in question. Vermont imposes a tax on income earned or received

---

* Taxpayers appealed pursuant to 32 V.S.A. § 5885(b) and V.R.C.P. 74. Section 5885(b) provides:

> Any aggrieved taxpayer may within thirty days, appeal a determination by the commissioner concerning a notice of deficiency, an assessment of penalty or interest, or a claim to refund, to the Washington superior court or the superior court of the county in which the taxpayer resides or has a place of business.

by Vermont residents. 32 V.S.A. §§ 5822, 5823. Residents for purposes of this tax include "individual[s] ... qualifying for residency in this state during the entirety of that taxable year." 32 V.S.A. § 5811(13). An individual qualifies for residency if he is "domiciled" within the state. 32 V.S.A. § 5811(11)(A)(i).

■ We have defined "domicile" in the past to mean "a place where a person lives or has his home, to which, when absent, he intends to return and from which he has no present purpose to depart." *Tower v. Tower*, 120 Vt. 213, 221, 138 A.2d 602, 607 (1958) (party without jurisdiction to bring divorce action since not domiciled in Vermont). Domicile is essentially comprised of two elements: residence and intention. *Walker v. Walker*, 124 Vt. 172, 174, 200 A.2d 267, 269 (1964); *In re Hanrahan's Will*, 109 Vt. 108, 116, 194 A. 471, 479 (1937). "To make a change in domicile effective there must be a move to the new residence and dwelling there, coupled with an intention of remaining there indefinitely." *Walker*, 124 Vt. at 174, 200 A.2d at 269; *Town of Georgia v. Town of Waterville*, 107 Vt. 347, 352, 178 A. 893, 899 (1935); *Dailey v. Town of Ludlow*, 102 Vt. 312, 317, 147 A. 771, 776 (1929). An essential ingredient of the intention requirement is the intent to give up the old domicile. *Walker*, 124 Vt. at 174, 200 A.2d at 269; *Town of Georgia*, 107 Vt. at 352, 178 A. at 899.

■ Here, the Commissioner found that Mr. Piche did not intend to abandon Vermont as his domicile when he left the state in 1980. The Commissioner also found that Mr. Piche did not abandon his Vermont domicile during the years in question. We think these findings of fact fairly and reasonably support the Commissioner's conclusion that Mr. Piche was domiciled in Vermont during 1981, 1982 and the first half of 1983. See *In re Orzel*, 145 Vt. 355, 359, 491 A.2d 1013, 1015 (1985) ("[A]n agency's conclusions of law will be upheld if they are fairly and reasonably supported by the findings of fact.").

■ The taxpayers also contend that the superior court erred by failing to review the Commissioner's findings of fact. They submitted to the superior court a document entitled "Proposed Findings, Conclusions and Order" in which they argued that the Commissioner's findings should be amended.

We note at the outset that the superior court was without authority to grant the relief requested. The appeals statute does not contemplate de novo review, and it was the function of the court to review the case on the basis of the record established before the Commissioner. *State Dep't of Taxes v. Tri-State Indus. Laundries, Inc.*, 138 Vt. 292, 294, 415 A.2d 216, 218 (1980). The superior court was precluded from factfinding or amending facts found.

Even if we were to assume authority in the superior court to amend the findings, taxpayers' challenge, as presented to the superior court, was insufficient. In their "Proposed Findings, Conclusions and Order," taxpayers set forth in detail proposed language changes to fourteen of the thirty-eight findings made by the Commissioner. Taxpayers failed, however, to make any claim that the findings they sought to amend were without supporting evidence, contrary to the weight of the evidence, or in any other way deficient. Neither their "Proposed Findings, Conclusions and Order" nor the accompanying memorandum of law indicated to the superior court why the findings as made were inadequate or erroneous. This was inadequate briefing, and the superior court was correct in assuming that the Commissioner's findings were not contested. *Quazzo v. Quazzo*, 136 Vt. 107, 111, 386 A.2d 638, 641 (1978).

The Vermont Department of Taxes argues that the superior court erred by reversing the assessment of a 25% penalty against Mrs. Piche's 1981 Vermont income tax return. The discretionary authority to assess penalties for failure to pay tax liability when due is provided to the Commissioner by 32 V.S.A. § 5875. The taxpayer must, however, be notified of the tax liability before the Commissioner can assess a penalty. 32 V.S.A. § 5875(a)(2). Taxpayers who file their state returns late are presumed to have notice of any tax liability "on the date that the return is prescribed to be filed." *Id.*

The superior court based its reversal on a finding that the Commissioner acted in accordance with a policy favoring automatic assessment of penalties. According to the court, the Commissioner, by doing so, violated his duty under 32 V.S.A. § 5875 to exercise discretion when imposing penalties for delinquent payment.

We agree with the Department of Taxes that the Commissioner did not abuse his discretion under these circumstances. Mrs. Piche filed her 1981 return late and was presumed to have notice of the tax liability on the date the return was due to be filed. With the notice requirement of § 5875(a)(2) satisfied, it was clearly within the Commissioner's discretionary authority to assess a penalty.

The fact that the penalty was imposed automatically by the Department of Taxes when the delinquency was discovered does not negate the exercise of discretion on the part of the Commissioner, particularly when any penalty assessed is subject to individual review upon appeal to the Commissioner. 32 V.S.A. § 5883. It merely represents the full extent to which the Commissioner has chosen to exercise his discretionary authority as granted under the statute. Thus, the superior court committed error by concluding that the Commissioner abused his discretion and reversing the assessment of the penalty. See *Finkle v. Town of Rochester*, 140 Vt. 287, 289, 438 A.2d 390, 392 (1981) (decisions left to the discretion of an administrative agency "will not be disturbed unless there is shown an abuse of discretion").

*Affirmed in part and reversed in part.*