In re Alan G. SCHMIDT, Debtor.

Alan G. Schmidt, Plaintiff,

v.

State of Vermont, Department of Revenue, Defendant.

Bankruptcy No. 99–04302–BGC–7.
Adversary No. 99–00275.

United States Bankruptcy Court, N.D. Alabama, Southern Division.

Jan. 21, 2001.

---

Michael Antonio, Jr., Birmingham, AL, for plaintiff.

Timothy Collins, Montpelier, VT, for defendant.

### Memorandum Opinion on Debtor's Complaint to Determine Dischargeability of Debt

BENJAMIN COHEN, Bankruptcy Judge.

The State of Vermont contends that the debtor owes personal income taxes for 1991 and 1992. The debtor contends that those debts are dischargeable.

The matter before the Court is the debtor's *Complaint To Determine Dischargeability of Debt* filed on August 13, 1999. After notice, a trial was held on September 20, 2000. Mr. Alan G. Schmidt, the debtor and Mr. Michael J. Antonio, his attorney, appeared in court. Mr. Timothy Collins,

Special Assistant Attorney General representing the Vermont Department of Taxes (VDT) and Mr. Sylvester Stempel, a representative of the State of Vermont Department of Revenue, appeared by video-teleconferencing.

## I. Background

Section 523(a)(1)(B)(i) of the Bankruptcy Code provides that a discharge granted to a Chapter 7 debtor does not discharge a debtor from any tax debt for which a return, if required, was not filed. 11 U.S.C. § 523(a)(1)(B)(i).

The debtor admits that he did not file personal income tax returns for 1991 and 1992, but he alleges in his complaint that he was not required to file those returns because he was not domiciled in Vermont in those years.[1] The debtor concludes that the tax debts the State of Vermont contends he owes for those years were therefore discharged by the order entered by this Court on December 6, 1999.[2]

The State of Vermont contends that the debtor was domiciled in Vermont in 1991 and 1992, and therefore was required to file Vermont income tax returns for those years. The state concludes that the debtor's failure to file the returns renders the debtor's Vermont personal income taxes for 1991 and 1992 non-dischargeable pursuant to 11 U.S.C. § 523(a)(1)(B)(i).[3]

## II. Legal Framework

### A. Applicable Bankruptcy Statute

Section 523(a)(1)(B)(i) of the Bankruptcy Code provides that a discharge granted to a Chapter 7 debtor does not discharge a debtor from any tax debt for which a return, if required, was not filed. 11 U.S.C. § 523(a)(1)(B)(i).

### B. Applicable Vermont Statutes

Section 5822 of Title 32 of the Vermont Statutes Annotated imposes a tax, "for each calendar year or fiscal year ending during that calendar year upon the income earned or received in that taxable year by *every individual*, estate and trust." Vt. Stat. Ann. tit. 32, § 5822 (emphasis added). Section 5861 of the same title requires, "[e]very individual" who is subject to taxation for any taxable year under section 5822 to file a Vermont income tax return if that individual is required to file a United States income tax return for that year and either earned more than $100.00 in "Vermont income," if a resident of that state, or received more than $1,000.00 in gross income from activities which occurred in Vermont, if a nonresident. Vt. Stat. Ann. tit. 32, § 5861.

The "Vermont income" of a *"resident individual"* includes all of that individual's adjusted gross income for the applicable taxable year less certain exempt sources which are inapplicable to the present controversy. Vt. Stat. Ann. tit. 32, § 5823(a).

1. In his complaint and other pleadings the debtor also included his objection to the defendant's attempt to collect Vermont income tax debts for 1993 and 1994. The debtor claimed that those debts were also dischargeable. In an order and memorandum opinion entered on June 7, 2000, on a motion for summary judgment by the State of Vermont, this Court found that those debts were non-dischargeable. This Court specifically found that a decision in favor of the defendant by a hearing officer in a state administrative proceeding requiring the debtor to file 1991 and 1992 Vermont income tax returns was binding on this Court and that because the debtor had not filed those returns, (which the debtor admitted), the debts for the taxes represented by those returns were not dischargeable.

2. That is, the debtor contends the debts are *not* non-dischargeable pursuant to section 523(a)(1) of the Bankruptcy Code. 11 *U.S.C.* § 523(a)(1).

3. On October 27, 1994, and on November 29, 1994, Mr. Sylvester Stempel, an employee of the Vermont Department of Taxes, mailed letters to Mr. Schmidt requesting him to file Vermont income tax returns for 1991 and 1992. In those letters Mr. Stemple informed Mr. Schmidt that an estimated assessment of the Vermont income taxes due for those years would be made if he did not provide returns. Mr. Schmidt did not respond to either letter. As promised, the VDT prepared estimated assessments against Mr. Schmidt for 1991 and 1992. Mr. Schmidt did not appeal either assessment.

In contrast, the "Vermont income" of a *nonresident* individual," includes only income earned by virtue of activities conducted in Vermont. Vt. Stat. Ann. tit. 32, § 5823(b).

An individual is considered a resident of Vermont, and a "resident individual," for that portion of a taxable year in which domiciled in Vermont. Vt. Stat. Ann. tit. 32, § 5811(11) & (13).

## C. Vermont Domicile Law

A domicile in Vermont is the, "place where a person lives or has his home, to which, when absent, he intends to return and from which he has no present purpose to depart." *Piche v. Department of Taxes,* 152 Vt. 229, 565 A.2d 1283, 1285 (1989)(quoting *Tower v. Tower,* 120 Vt. 213, 138 A.2d 602, 607 (1958)). This concept has two essential elements: residence and intention. *Id.* "No question is made as to what elements are necessary to constitute domicile. The fact of residence, and the intent to make the place of residence the home of the party, must concur." *Fulham v. Howe,* 62 Vt. 386, 20 A. 101, 103 (1890). "But continuous inhabitancy is not necessary. Mere absence, however long continued, so it be for a temporary purpose, and with the intention of returning always in mind, will not effectuate a change of domicile." *Id.*

In Vermont, in order to change domicile, an individual must move to a new residence and dwell there with the intent to remain indefinitely. *Godino v. Cleanthes,* 163 Vt. 237, 656 A.2d 991, 993 (1995). "To make a change in domicile effective there must be a move to the new residence and dwelling there, coupled with an intention of remaining there indefinitely." *Piche v. Department of Taxes,* 565 A.2d at 1285 quoting *Walker v. Walker,*

124 Vt. 172, 200 A.2d 267, 269–270 (1964). "[N]o certain or definite duration of residence is requisite to accomplish the acquisition of a new domicile." *Dailey v. Town of Ludlow,* 102 Vt. 312, 147 A. 771, 773 (1929). "Indeed, it has been said that a day or an hour will suffice for the acquisition of a domicile." *Id.*

Essential to a change of domicile, however, is the intent to abandon the previous domicile. *Piche v. Department of Taxes,* 565 A.2d at 1285. "Although one can change domicile by moving to a new residence and dwelling there with the intent to remain indefinitely, '[a]n essential ingredient of the intention requirement is the intent to give up the old domicile.' " *Godino v. Cleanthes,* 656 A.2d at 993 (quoting *Piche v. Department of Taxes,* 565 A.2d at 1285).

In *Town of Georgia v. Town of Waterville,* 107 Vt. 347, 178 A. 893 (1935), the Supreme Court of Vermont explained:

A change of domicile is effected only by the concurrence of an act and an intention. The absence of either of these thwarts the change. The necessary act is the actual transfer of bodily presence from the town of the residence. The necessary intention is a fixed and definite determination to remain in the new town or, at least, such *a determination not to return to the old one.*

*Id.* at 895 (emphasis added).

## III. Issue

Was the debtor domiciled in Vermont during the calendar years 1991 and 1992?[4]

If the debtor was domiciled in Vermont in 1991 and 1992, he was a resident of Vermont for those years. Vt. Stat. Ann. tit. 32, § 5811(11) & (13). If he was a Vermont resident during those years, Ver-

4. Vermont law is clear that if the facts establish that Mr. Schmidt was *domiciled in Vermont in 1990,* and did not give up that domicile with the intent not to return, Vermont remained his domicile in 1991 and 1992. As quoted above, "Although one can change domicile by moving to a new residence and

dwelling there with the intent to remain indefinitely, '[a]n essential ingredient of the intention requirement is the intent to give up the old domicile.' " *Godino v. Cleanthes,* 656 A.2d at 993 (quoting *Piche v. Department of Taxes,* 565 A.2d at 1285).

mont law required him to file Vermont income tax returns for those years. If he was required to file those returns but did not, the Vermont taxes owed by him for those years are non-dischargeable in bankruptcy. 11 U.S.C. § 523(a)(1)(B)(i). For the reasons stated below, the Court finds that the debtor was domiciled in Vermont in 1991 and 1992.

## IV. Findings of Fact

### A. The Debtor's Testimony

Mr. Schmidt testified that in conjunction with his employment as a commercial fisherman, he physically resided on a fishing boat in the Atlantic Ocean for about 300 days of each of the calendar years 1991 and 1992. These 300 days, he explained, were comprised of separate trips of six to ten days. He also explained that when the boat was not at sea, it was docked in a New Hampshire port where it remained for about two days after each sea run.

Mr. Schmidt testified that he, of course, lived on the boat when it was at sea, but that when the boat was in port, he resided in Connecticut, that is except once a month, when he returned to Vermont to visit his daughter and former girlfriend.

Mr. Schmidt testified that he is originally from Connecticut. *He claims that Vermont has never been his full-time domicile.*[5] He testified that he moved to Vermont in 1988 or 1989 with his girlfriend and their daughter, and the girlfriend's other two children, but after six months, he moved back to Connecticut. His girlfriend and the three children remained in Vermont.

Mr. Schmidt testified that he returned to Vermont in the winter of 1989 to work as a snow maker and after a period of four months returned to Connecticut. Accord-

ing to his testimony, since the winter of 1989, Mr. Schmidt has not worked in Vermont and except for periodic visits to see his daughter, he did not return to Vermont.

### B. Additional Facts

In contrast to the debtor's testimony, the facts before the Court establish not only that the debtor was domiciled in Vermont in 1991 and 1992 but also that he was domiciled in Vermont in 1990 and did not, as required by Vermont law if he intended to change his domicile, give up that domicile to claim another. Those facts are:

1. Contrary to the debtor's assertion that he was not domiciled in Vermont in 1990, Mr. Schmidt filed a state of Vermont income tax return for 1990.[6]

2. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar year 1990, Mr. Schmidt filed a Vermont income tax return for 1990 in which he stated that his "City/Town & State of Legal Residence as of 12–31–90" was "Troy, Vermont." Defendant's Exhibit 1B.

3. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar year 1990, Mr. Schmidt filed a Vermont income tax return for 1990 in which he described his mailing address as "P.O. Box 82, Troy, Vermont." Defendant's Exhibit 1B.

4. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar year 1990, Mr. Schmidt filed a Vermont income tax return for 1990 in which he indicated that 100 percent of his income was subject to Vermont income taxes, even though it is apparent that most of his income for that year was not earned in the state of Vermont, but instead was

5. In contrast, the debtor filed a 1990 income tax return in Vermont in which he indicated that 100 percent of his income was subject to Vermont income taxes.

6. The debtor's action in 1990 are important for at least two reasons. First, Mr. Schmidt testified that Vermont has never been his full-

time domicile. His actions in 1990 prove otherwise. Second, as stated above, if Mr. Schmidt was domiciled in Vermont in 1990 but did not change that domicile and intend to give up that domicile, he remained domiciled in Vermont in the years after.

earned as a "Fisherman" on a boat in the Atlantic Ocean. Defendant's Exhibit 1B.

5. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar year 1990, a "W–2" form attached to the Vermont income tax return filed by Mr. Schmidt for 1990 shows that he worked in Jay, Vermont for at least a portion of the year for a company named "Jay Peak, Inc.," which paid him wages totaling $2,377.90. Defendant's Exhibit 1B.

6. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar year 1990, Mr. Schmidt filed a Vermont income tax return for 1990 in which he represented himself to be a full-time Vermont resident for purposes of claiming a "Vermont earned income credit" in an amount which would only have been available to him as a full-time Vermont residence. In fact, that portion of the form on which he claimed the credit specifically states "residents complete lines 41 and 42." Defendant's Exhibit 1B.

7. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar year 1990, on February 11, 1992, Mr. Schmidt filed an amended Vermont income tax return for 1990, in which he claimed his daughter, his girlfriend, and his girlfriend's son, (all of whom he admits were residents of Vermont during 1990) as dependents. He also represented that those persons lived in his home for the entire calendar year. Defendant's Exhibit 1B.

8. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar year 1990, in his amended 1990 Vermont income tax return for 1990, Mr. Schmidt again claimed all of the income earned by him during that calendar year as a fisherman outside of that state subject to Vermont income taxes. Defendant's Exhibit 1B.

9. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar year 1991, in the spring of 1991 Mr. Schmidt purchased a 10–acre parcel of unimproved land in Jay, Vermont for $17,000.00.

10. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar year 1991, on the "Vermont Property Transfer Tax Return" filed by him with the VDT on May 29, 1991, (in connection with his purchase of the Vermont acreage), Mr. Schmidt listed his mailing address as "P.O. Box 82, Troy, Vermont." Plaintiff's Exhibit 1.

11. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar year 1991 and 1992, on the "Vermont Property Transfer Tax Return" he filed in connection with his purchase of the Vermont acreage, Mr. Schmidt stated that the intended "primary use of property after transfer" was for his "primary residence." Plaintiff's Exhibit 1. He admitted at trial that when he purchased the property he intended to build a house on it and to occupy the house as his primary residence.

12. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar years 1991 and 1992, Mr. Schmidt paid the reduced primary residence tax rate on the transaction. That rate is one-half of one percent of the purchase price and is available only to one who intends to use property as a primary residence. Plaintiff's Exhibit 2.[7]

---

**7.** Although Mr. Schmidt's property was unimproved, and consisted primarily of forest, the reduced rated is, according to Mr. Stempel, available to a purchaser of unimproved property as long as the person builds and occupies a primary dwelling on the property within two years after purchasing the property. Mr. Schmidt's payment of the reduced rate, therefore, is clear evidence of his *intent* in the spring of 1991 to return to the Vermont property and to build a house on it within the two years following his purchase of the property and clear evidence of his *intent* to occupy that house as his primary residence. Otherwise he would have paid the higher (one and one-quarter percent) rate applicable to non-primary residence property. Whether the debtor completed a house within the two-year period

13. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar years 1991 and 1992, in response to a May 3, 1993, letter inquiry from the VDT regarding the progress, if any, made by him toward the construction of his residence on the acreage, Mr. Schmidt reported, "I have started. We have a well, barn 20'/40' by 16' high. I have the blue print and now I am waiting for the power company to put power to the property." Plaintiff's Exhibit 3. He admitted at trial that he was in the process of trying to build a house on the property when he formulated the response to the department's letter.

14. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar years 1991 and 1992, Mr. Schmidt built a barn on the property and obtained blueprints for the construction of a house on the property. He admitted at trial that some of the construction of the barn occurred in 1992.

15. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar years 1991 and 1992, Mr. Schmidt held a Vermont driver's license during both years but did not hold a New Hampshire driver's license for either year. He did however hold a Connecticut driver's license, but that fact of course indicates his residence in that state prior to moving to Vermont in 1988 or 1989.

16. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar years 1991 and 1992, on March 11, 1991, Mr. Schmidt filed an application with the Vermont Department of Motor Vehicles for a Vermont driver's license. On the application, Mr. Schmidt stated that his mailing address was "P.O. Box 82, Troy, Vermont" and that his "legal address" was "N. Jay Rd., Jay, Vermont." Defendant's Exhibit 2.

17. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar years 1991 and 1992, during each of those years, Mr. Schmidt's automobile was registered in the state of Vermont. No vehicle owned by Mr. Schmidt during that period of time was registered in either Connecticut or New Hampshire.

18. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar years 1991 and 1992, on February 17, 1992, Mr. Schmidt purchased a 1978 Dodge pick-up truck in Vermont, from Mr. James Buchanan, who lived in Derby, Vermont. Defendant's Exhibit 4.

19. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar years 1991 and 1992, on February 19, 1992, Mr. Schmidt registered the truck purchased by him in Vermont with the Vermont Department of Motor Vehicles. On his registration application, Mr. Schmidt listed his address as "P.O. Box 82, Troy, Vermont." Defendant's Exhibit 3. He was issued a certificate of title for the truck by the Vermont Department of Motor Vehicles. The certificate of title lists the "name and address of vehicle/vessel owner" as "Schmidt, Alan G., P.O. Box 82, Troy, Vermont 05868." Defendant's Exhibit 6.

20. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar years 1991 and 1992, Mr. Schmidt maintained a bank account in Vermont during those calendar years.

21. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar years 1991 and 1992, Mr. Schmidt obtained and held a Vermont resident fishing license for and during those calendar years.

22. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar years 1991 and 1992, Mr.

does not diminish the evidence establishing his clear intent in 1991 to make Vermont his home.

Schmidt did not, during those years, lease or purchase any real property in New Hampshire on which to live during the times he was not at sea. Furthermore, no evidence was offered by Mr. Schmidt either that he leased or purchased any real property in Connecticut.

23. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar year 1991, federal tax data supplied by the Internal Revenue Service to the VDT indicates that, on his 1991 federal 1040 tax return, Mr. Schmidt reported his address to be "P.O. Box 82, Troy, Vermont." Defendant's Exhibit 1B.

24. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar year 1991, federal tax data supplied by the Internal Revenue Service to the VDT indicates that Mr. Schmidt attached to his 1991 1040 tax return a form 1099 from Community National Bank in Derby, Vermont showing interest paid by that entity to him during that year in the amount of $103.00. Defendant's Exhibit 1B.

25. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar year 1991, federal tax data supplied by the Internal Revenue Service to the VDT indicates that Mr. Schmidt attached to his 1991 1040 tax return a form from Community National Bank in Derby, Vermont showing mortgage interest paid by him to that entity during that year in the amount of $977.00. Defendant's Exhibit 1B.

26. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar year 1991, federal tax data supplied by the Internal Revenue

Service to the VDT indicates that, on an application filed by him with the Department of State for a passport, Mr. Schmidt listed a Vermont address: "P.O. Box 102, Troy, Vermont 05868." Defendant's Exhibit 1B.

27. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar years 1991 and 1992, in those years during the times that he was not at sea, Mr. Schmidt "visited" (his characterization) his daughter, and her mother, at least once a month in Vermont, where he lived with them both before taking the job out of state.

28. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar years 1991 and 1992, during the times in those years that he was not at sea, Mr. Schmidt spent more time in Vermont than he did anywhere else. According to his testimony, Mr. Schmidt visited Vermont once a month during the years in question. And, on the domicile statements provided by him to the VDT, he indicated that he spent about four days out of each month of those years in Vermont. Plaintiff's Exhibits 6 & 7.[8]

29. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar years 1991 and 1992, according to the domicile statements provided by him to the VDT, Mr. Schmidt did not file income tax returns with the state of Connecticut in either of those two years even though Connecticut was the only other state in which he was physically present for any appreciable time during those years.[9] Plaintiff's Exhibits 6 & 7.

30. Contrary to the debtor's assertion that he was not domiciled in Vermont dur-

8. Accepting Mr. Schmidt's testimony, he spent about 300 days of each of those years at sea and spent about 65 days of each year on land. If Mr. Schmidt visited Vermont 12 times each year (once a month), and each visit lasted about four days, then Mr. Schmidt spent 48 of the 65 days he had on land in 1991 in Vermont and 48 of the 65 days he had on land in 1992 in Vermont.

9. According to Mr. Stempel, New Hampshire does not have a personal income tax. Had Mr. Schmidt paid Connecticut income taxes during the years in question it would not only indicate that he may have considered himself a domiciliary of that state but, in addition, he would have been entitled to a credit for those payments against his Vermont tax liability.

ing the calendar years 1991 and 1992, Mr. Schmidt did not, during either of those years, establish a domicile in New Hampshire. The only time he spent in New Hampshire during that period was going to and from his employer's boat and boarding and disembarking from that boat.

31. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar years 1991 and 1992, Mr. Schmidt did not, during either of those years, establish a domicile in Connecticut. According to his testimony, he spent less time in Connecticut during those years than he did in Vermont. He did not buy, lease or rent land in Connecticut during those years and did not, as stated before, file Connecticut income tax returns. He did not testify that he considered himself a domiciliary of Connecticut during 1991 or 1992. And there is nothing in his testimony to establish domicile there.

32. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar years 1991 and 1992, there is no evidence that during either of those years, did Mr. Schmidt establish a domicile on the boat owned by his employer, or anywhere else on the Atlantic Ocean. He lived on the boat for short intervals of temporary duration while the boat was at sea on its regular fishing expeditions. His presence on the boat, therefore, was merely temporary and intermittent, rather than permanent or indefinite.[10]

33. Contrary to the debtor's assertion that he was not domiciled in Vermont during the calendar years 1991 and 1992, in numerous documents executed by him during those years, Mr. Schmidt stated that his mailing address was "P.O. Box 82, Troy, Vermont" and/or that his street address was "N. Jay Rd., Jay, Vermont," which, he admitted at trial, were the mailing address and street address of his girlfriend and daughter, with whom he was living when he took the job in New Hampshire.

## V. Conclusions of Law

The Court must conclude that Mr. Schmidt was domiciled in Vermont in 1991 and 1992. The only evidence contrary is

---

**10.** There is also no evidence that Mr. Schmidt occupied the boat because of his desire to make the boat his home. He did not testify that he intended or desired to make the boat his domicile. And it is apparent that he lived on the boat only because of his employment.

There is also no evidence that suggests that Mr. Schmidt could have lived on the boat indefinitely even if that had been his intent. The boat was neither designed nor intended to be a permanent residence for the fisherman. It was intended instead for fishing expeditions of short durations and, incidental to that purpose, temporary berths were provided for the fisherman.

There is also no evidence that the boat was offered to or provided to Mr. Schmidt as a permanent residence. Instead, Mr. Schmidt occupied the boat solely at the pleasure of his employer. He did not own the boat. He did not rent or lease a residential berth on the boat. Therefore, he had no legal right to live on the boat indefinitely and therefore no right to remain on the boat once his employment was interrupted or terminated. Consequently, Mr. Schmidt would not have had the authority to make the boat his domicile.

There is also no evidence that Mr. Schmidt ever intended to make the boat his domicile, or in fact considered it to be his domicile. He occupied the boat only on a temporary basis. His presence on the boat was dictated by his employer. He could not have lived on the boat indefinitely even had he so desired, absent the permission of his employer. And the boat was not, during the times he occupied it, being provided as a permanent residence. It was instead provided only as a temporary accommodation to serve the object of his employer's business.

And finally, there is no evidence that suggests that Mr. Schmidt did not intend to return to Vermont. Quite to the contrary, the evidence establishes that on most occasions when the boat returned to port, Mr. Schmidt returned to Vermont. Vermont was the precise place where he lived before going to New Hampshire. It was the same place he returned to be with the same people he lived with prior to going to New Hampshire. It was where he had a place to stay. It was where his daughter lived and went to school. It was where the mother of his child lived. It was where he owned property on which he someday wished to build a home. It was where his car was registered. It was where he had a driver's license. And it was where he had a fishing license.

Mr. Schmidt's self-serving testimony. All of the credible evidence proves that Mr. Schmidt's absences from Vermont for portions of 1990 through 1992 were temporary and solely for purposes of employment.

11. This ruling is consistent with, and probably required by, the decision of the Vermont Supreme Court in *Piche v. Department of Taxes*, 152 Vt. 229, 565 A.2d 1283 (1989), which involved a very similar factual situation to Mr. Schmidt's. At issue in *Piche* was a taxpayer's liability for 1981 through 1983 Vermont income taxes. The taxpayer claimed that he was not liable for the taxes because he was not domiciled in Vermont during those years. The taxpayer was a domiciliary of Vermont in 1980. His address was 41 Barrett Street, South Burlington, Vermont. In December 1980, he and his wife separated. One week later, he accepted employment with the merchant marine and was sent to Virginia by his employer. He spent approximately one month in Virginia loading his ship and left port on it in February 1981. In early April he received injuries while aboard the ship and returned to his home (where his estranged wife continued to reside) in South Burlington, Vermont. On April 24, 1981, his wife obtained a temporary restraining order prohibiting him from remaining in the home. He moved into his grandmother's home, also in Vermont, where he remained for five weeks while recovering from his injuries. When fully recovered, he returned to his ship, then in the Pacific Ocean.

For the next two years, the taxpayer worked on board the ship while it was both in port in Virginia and at sea. During the period of his employment on the ship he spent some of his free weekends at his brother-in-law's home in Virginia. His stay in Virginia was for the purpose of working there, and he intended to remain there as necessary for his employment. In June 1983, he was transferred to Florida and assigned to a new ship where he remained until he resigned at the end of November 1983. In January 1984, the taxpayer returned to Vermont and reconciled with his wife.

Between the time the taxpayer first left Vermont in December 1980, and when he returned in January 1984, he made five trips to Vermont. The first was in 1981 after his injury. He returned again in December 1982 when he spent about a week at his grandmother's house. His last three visits occurred between June and December 1983.

Throughout his employment with the merchant marine, the taxpayer's employment records listed 41 Barrett Street, South Burlington, Vermont, as his permanent and

Throughout that period, he considered Vermont his home. He always intended to return to Vermont. He never intended to remain indefinitely in New Hampshire, Connecticut, or afloat on the Atlantic Ocean.[11]

emergency address. His wife received mail for him at that address, including mail sent from his employer. During the years in question, he was registered to vote in Vermont and maintained banking arrangements in Vermont, Florida and Virginia. He and his wife's federal income tax returns for 1981, 1982 and 1983 were filed jointly as a married couple and listed 41 Barrett Street as their home address. At no time during the period did the taxpayer file any income tax returns with the State of Virginia.

The tax commissioner found that when the debtor left Vermont in 1980, the debtor did not intend to abandon his Vermont domicile and, in fact, did not abandon it during the years in question. The Supreme Court of Vermont affirmed the tax commissioner's decision. "We think these findings of fact fairly and reasonably support the Commissioner's conclusion that Mr. Piche was domiciled in Vermont during 1981, 1982 and the first half of 1983." 565 A.2d at 1285.

This Court's decision is also consistent with *Godino v. Cleanthes*, 163 Vt. 237, 656 A.2d 991 (1995), a non-tax case. The issue in *Godino* was *in personam* jurisdiction over a defendant in Florida in an action brought by a lender against a borrower to collect on a promissory note. Prior to the suit, the defendant was living in Vermont in a house she owned. In December 1992 she left Vermont for Florida. She sought state services in Florida and in May 1993 obtained a full-time job. She then leased an apartment in June 1993. However, she retained her home in Vermont, retained her Vermont driver's license, and continued to register her car in Vermont. Suit was filed against her in a Vermont court in August 1993. The plaintiff claimed that the defendant was a domiciliary of Vermont, even though she was living in Florida, and that personal jurisdiction over the defendant could be exercise by the Vermont court based on domicile.

The trial court dismissed the action because of lack of personal jurisdiction but the Supreme Court of Vermont reversed, citing the defendant's retention of the house, driver's license, and car registration as sufficient evidence that she intended to retain her Vermont domicile. That court explained:

Plaintiffs alleged that defendant resided in Wardsboro, and the parties' submissions show that defendant owns a residence there. Further, the parties' submissions

Mr. Schmidt was not, as he contends, a domiciliary of another state who occasionally visited Vermont. He was a domiciliary of Vermont with an out-of-state job. That domicile in Vermont could not change simply because his employment required him to be absent from Vermont for temporary, yet extended periods of time.[12]

Mr. Schmidt received his mail in Vermont. He had a Vermont driver's license. He had a home in Vermont where his daughter and the mother of his daughter lived. He returned to that home every month. That home ostensibly was the same home he lived in when he took his out-of-state job. He purchased land near his home in Vermont to build a new home. He made efforts, although incomplete efforts, to build that home. His bank account was in Vermont. He purchased a car in Vermont. He registered the title to that car in Vermont. He made payments on a mortgage on property in Vermont. Simply put, Mr. Schmidt's domicile was Vermont.

## VI.   Conclusion

Because Mr. Schmidt was domiciled in Vermont during the calendar years 1991 and 1992, he was required by Vermont law to file Vermont income tax returns for those years. His failure to file those returns makes the Vermont taxes owed by him for those years non-dischargeable in bankruptcy. 11 U.S.C. § 523(a)(1)(B)(i).

A separate order will be entered in accordance with this opinion.

## ORDER

In conformity with and pursuant to the Memorandum Opinion entered contemporaneously herewith, it is **ORDERED, ADJUDGED AND DECREED** that:

1.   Judgment is entered in favor of the defendant and against the plaintiff;

2.   The debtor's personal income tax debts for 1991 and 1992 are non-dischargeable pursuant to 11 U.S.C. § 523(a)(1)(B)(i).

show that defendant registered her car in Vermont and retained her Vermont driver's license. These facts, taken as true and viewed most favorably to plaintiffs, show that defendant has her home in Vermont and was only temporarily absent.

Although one can change domicile by moving to a new residence and dwelling there with the intent to remain indefinitely, "[a]n essential ingredient of the intention requirement is the intent to give up the old domicile." *Id.* Defendant's retention of the home, license, and registration evidence the opposite intent, the intent to keep the old domicile. Consequently, plaintiffs have met their prima facie burden of proving personal jurisdiction. 656 A.2d at 993.

12.   And even when it did require him to be outside of Vermont, the evidence is clear that Mr. Schmidt considered and treated Vermont as his home.