*Citibank (South Dakota), N.A. v. Vermont Department of Taxes*, No. 709-11-14 Wncv (Teachout, J., June 30, 2015)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

**SUPERIOR COURT**                                                    **CIVIL DIVISION**
**Washington Unit**


**CITIBANK (SOUTH DAKOTA), N.A.**                    **Docket No. 709-11-14 Wncv**
        **Appellant**


        **v.**


**VERMONT DEPARTMENT OF TAXES**
        **Appellee**


_____


**SEARS, ROEBUCK AND CO.**                              **Docket No. 710-11-14 Wncv**
        **Appellant**


        **v.**


**VERMONT DEPARTMENT OF TAXES**
        **Appellee**


### DECISION ON APPEAL


Citibank (South Dakota), N.A., (Citibank) and Sears, Roebuck and Co. (Sears) appeal from determinations of the Commissioner of the Vermont Department of Taxes denying them the benefit of an exclusion from the sales tax related to bad debts.[1] In concert with Vermont retailers, such as Sears, Citibank issues private label credit cards to consumers who use them to finance purchases from the respective retailer. Some of those consumers default on their accounts with Citibank with respect to sales on which the underlying retailer already collected and paid the Vermont sales tax. Citibank and Sears claim that bad debt of that sort entitles each of them to the bad debt exclusion from the Vermont sales tax, 32 V.S.A. § 9780. The exclusion is available if the person who was required to pay the sales tax later writes off the sale as worthless debt.

In these cases, Sears and similarly situated retailers were required to pay the sales tax on purchases charged to private label credit cards (cards with the retailer store name on them) issued to customers by Citibank. For customers who failed to pay the Citibank credit card account balance on which such purchase was charged, any related bad debt could be treated as a bad debt

---

[1] These are separate cases that have not been consolidated pursuant to Rule 42. Because the disposition of each case depends almost entirely on the identical legal issue, the court is jointly deciding these cases in the interest of efficiency. The parties are cautioned to avoid joint filings so long as the cases are not formally consolidated.

under the Internal Revenue Code. Appellants in each of these cases subsequently sought the benefit of the sales tax exclusion described above in proceedings with the Vermont Department of Taxes (Citibank applied for a refund and Sears requested a deduction during an audit.)The Commissioner ruled that the exclusion does not apply to either entity in these circumstances.

*The exclusion*

Since 1969, the Commissioner of the Department of Taxes has been authorized by statute to exclude from the sales tax those sales that result in bad debts or are cancelled:

> The Commissioner may provide by regulation for the exclusion from taxable receipts, amusement charges of amounts representing sales where the contract of sale has been cancelled, the property returned on the receipt or charge has been ascertained to be uncollectable or, in the case the tax has been paid upon that receipt or charge, for refund or credit of the tax so paid.

32 V.S.A. § 9780. Originally, the Department provided by regulation as follows:

> Where the vendor or person required to collect tax is unable to collect accounts receivable in connection with which he has already remitted the tax to the Commissioner, he may apply for a refund or credit within two years of the date the accounts were actually charged off on his books and records.

Citibank Determination 6 (quoting Regulation § 226-13). In 2007, the original regulation was replaced, in part, with the following:

> A. Where the seller or person required to collect tax is unable to collect accounts receivable in connection with which he or she has already remitted the tax to the commissioner, that person or seller may apply to the commissioner for a refund or credit. Bad debt shall be defined as in Section 166 of the Internal Revenue Code. 26 U.S.C. § 166.
>
> . . .
>
> C. A claimant seeking recovery for bad debt shall deduct the debt on the return for the period during which the bad debt is written off as uncollectable in that claimant's books and records and is eligible to be deducted for federal income tax purposes. . . .
>
> D. If a claimant takes a deduction for bad debt, and the debt is subsequently collected in whole or in part . . . .
>
> E. If the amount of bad debt exceeds the amount of taxable sales for the period during which the bad debt is written off, the claimant may file a refund claim with the commissioner in accordance with 32 V.S.A. § 5884. . . .

.   .   .

G. . . . If the claimant's books and records support an allocation of bad debts among several states, the commissioner shall allow the allocation.

Vermont Sales and Use Tax Regulations § 1.9780. Both regulations apply here due to the timing of the underlying events of these cases.


*Facts*

Each of these cases proceeded to the Commissioner on stipulated facts. Citibank entered into consumer credit agreements with certain Vermont retailers, including Sears, and their customers, providing those customers with credit cards to finance purchases from the retailers. When the customer charges a purchase, Citibank pays the retailer the amount charged—the sale amount plus any sales tax. The retailer reports its taxable sales to the Department and pays the sales tax. If a customer defaults on the credit card account with Citibank, Citibank eventually charges off the account balance as worthless debt in accordance with Section 166 of the Internal Revenue Code. Citibank—not the retailer—takes the loss. Citibank is the sole owner of the credit card account. The retailer, such as Sears, does not extend credit to the customer and is not responsible for losses on defaulted accounts.

Citibank sought sales tax refunds from the Department pursuant to 32 V.S.A. § 9780 in an amount corresponding to the value of sales tax included in relevant defaulted credit card accounts for periods from February 2004 through June 2007.[2] The refund requests were denied and the administrative appeals consolidated into one case.

Sears' sales and use tax returns for periods from June 2004 through May 2007 were audited by the Department. It was found to have deducted from its taxable sales (thus lowering its sales tax obligation) the amount of debt that Sears customers defaulted on with Citibank. The Department disallowed those deductions and assessed sales tax owed.

Citibank and Sears both argued to the Commissioner that since they act together with the consumer in completing the sale that generates the sales tax, they should be considered in combination to satisfy the requirements of the regulations. The Commissioner rejected this argument on numerous bases, including the plain language of the regulations.


*Standard*

The court reviews this case "on the basis of the record established before the Commissioner." *Piche v. Dep't of Taxes*, 152 Vt. 229, 233 (1989) (citing *State Dep't of Taxes v. Tri-State Indus. Laundries, Inc.*, 138 Vt. 292, 294 (1980)). The Commissioner's decision is presumed "correct, valid and reasonable, absent a clear and convincing showing to the contrary." *Tri-State Indus. Laundries*, 138 Vt. at 294.

---

[2] Citibank's refund requests relate to private label credit card programs it had with Vermont retailers, not just Sears.

3

*Applicability of the exclusion*

Both regulations plainly contemplate that the exclusion applies only to one who is both (1) required to collect the sales tax <u>and</u> (2) who actually suffers the loss associated with the uncollectible debt. Under the arrangement between Sears (and other retailers) and Citibank, the retailer as the seller is required to collect the sales tax, whereas the obligation to suffer the losses on defaulted, financed sales falls to Citibank. Thus, neither Sears nor Citibank is entitled to relief pursuant to 32 V.S.A. § 9780, since neither meets both requirements.

Sears and Citibank argue that in combination they do satisfy the requirements of § 9780. Each regulation applies to a vendor or seller "or person required to collect [the sales and use] tax." "Person" is defined by statute to mean "an individual, partnership, society, association, joint stock company, corporation, public corporation or public authority estate, receiver . . ., *and any combination of the foregoing*." 32 V.S.A. § 9701(1). Sears and Citibank, they argue, are acting in combination with each other for purposes of the underlying consumer transaction and for purposes of 32 V.S.A. § 9780.

They argue that the effect of their combination is the same as if a store allowed its customers to have credit accounts directly with the store and charge purchases for later payment. Under the regulations, if the customer never paid the store account, the retailer would be able to have the benefit of the exclusion, since it had already remitted the tax to the Department of Taxes but never collected for it. Sears and Citibank argue that under their arrangement, they are acting in combination to the same end, and either one or the other of them should be entitled to the benefit of the exclusion.

They are not acting in combination in any meaningful way, however, insofar as the *obligation* to collect the sales tax goes. Both regulations apply to persons required to collect the sales tax. By statute, the person required to collect the sales tax means "every vendor of taxable tangible personal property or services, every recipient of amusement charges. These terms shall also include any officer or employee of a corporation or other entity or of a dissolved entity who as that officer or employee is under a duty to act for the corporation or entity in complying with any requirement of this chapter." 32 V.S.A. § 9701(14). A vendor, generally, is the person who makes the sale. 32 V.S.A. § 9701(9).

Citibank merely provides financing. It acknowledges that it has no obligation to collect the sales tax. There is no meaningful way to construe it as the vendor or other person required to collect the sales tax. Nothing in the statutory scheme or the language of the regulations implies that an entity that provides financing and otherwise is distinct from the entity making the sale or responsible for collecting the sales tax attains the status of one who is required to collect the tax for purposes of § 9780.

Sears is the person responsible for collecting the sales tax. The exclusion applies, however, only to the person who both is responsible for collecting the sales tax and actually takes the loss. Sears does not take the loss. It is fully paid for the sales that generate losses for

4

Citibank.

The plain language of the regulations is clear. The exclusion does not apply in these cases. It is unnecessary to evaluate the parties' policy arguments or analyze the out of state authority they have assembled.

*Penalty*

Sears also argues that the Department abused its discretion in assessing a penalty pursuant to 32 V.S.A. § 3202(b)(3) because it did not act in bad faith.

The Commissioner is authorized to assess a penalty for the failure to pay taxes as follows: "When a taxpayer failed to pay a tax liability imposed by this title . . . on the date prescribed therefor, then in addition to any interest payable . . ., the Commissioner may assess and the taxpayer shall then pay a penalty." 32 V.S.A. § 3201(b)(3). The Commissioner has separate authority to assess penalties for the negligent failure to pay, the fraudulent failure to pay, and for violations based on illegal activity.

Subsection 3201(b)(3) does not say that a penalty is warranted in the case of bad faith or unwarranted in the case of good faith. It authorizes the Commissioner to assess a penalty when there is a failure to pay taxes when they are due. It does not limit that discretion. While the Commissioner may well consider a taxpayer's good or bad faith in deciding whether to impose a penalty, that exercise of discretion leaves little room for review on appeal.

*Conclusion*

Neither Citibank nor Sears has made a showing of error sufficient to reverse the Determinations of the Commissioner.

**ORDER**

For the foregoing reasons, the Determinations of the Commissioner are affirmed.

Dated at Montpelier, Vermont this _____ day of June 2015.

_____
Mary Miles Teachout,
Superior Judge

5